**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 353-0404

***Counsel for Plaintiff***

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS HANSON, on behalf of himself, all others similarly situated, and the general public,<br><br>      Plaintiff,<br><br>        v.<br><br>WELCH FOODS INC.,<br><br>      Defendant. | Case No.: 3:20-cv-2011<br><br>CLASS ACTION<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Curtis Hanson, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendant Welch Foods Inc. ("Welch"), and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief, including the investigation of his counsel.

## INTRODUCTION

1.     Welch prominently represents on the label of each of its 100% Grape Juice, 100% Juice Red Sangria, and 100% Black Cherry Concord Grape Juice products (the "Welch Grape Juices") that it "Helps Support a Healthy Heart." This representation—a structure/function claim—is false and misleading for at least three reasons.

2.     First, at levels typically consumed, 100% fruit juices, such as the Welch Grape Juices, increase the risk of cardiovascular disease. Second, at levels typically consumed, 100% fruit juices, such as the Welch Grape Juices, increase the risk of type 2 diabetes. Third, at levels typically consumed, 100% fruit juice is associated with increased all-cause mortality.

3.     Plaintiff brings this action against Welch on behalf of himself, other consumers, and the general public, to enjoin Welch from deceptively marketing the Welch Grape Juices as helping to support a healthy heart, and to recover compensation for injured class members.

## THE PARTIES

4.     Plaintiff Curtis Hanson is a resident of Alameda County, California.

5.     Defendant Welch is a Michigan corporation with its principal place of business at 300 Baker Avenue, Concord, Massachusetts 01742.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a state different from Welch. In addition, more than two-thirds of the members of the class reside in states other than the state in which Welch is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

7.    The Court has personal jurisdiction over Welch pursuant to Cal. Code Civ. P. § 410.10, as a result of Welch's substantial, continuous and systematic contacts with the State, and because Welch has purposely availed itself of the benefits and privileges of conducting business activities within the State.

8.    Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c), because Welch resides (*i.e.*, is subject to personal jurisdiction) in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## INTRADISTRICT ASSIGNMENT

9.    Pursuant to N.D. Cal. Civ. L.R. 3-2(c), (d) & 3-5(b), this action is properly assigned to either the San Francisco or Oakland division because a substantial part of the events and omissions which give rise to the claim occurred in Alameda County.

## FACTS

## I.    WELCH MARKETS THE WELCH GRAPE JUICES AS HEART-HEALTHY

10.    Welch was founded in 1869 as a private company, but was later sold to the National Grape Cooperative Association, comprising approximately 1,300 grape growers throughout the United States and Canada. Although best known for its grape juices, Welch also manufactures grape jams and jellies, and an array of other products, including other fruit juices, concentrates, and fruit snacks.

11.    Among the grape juices Welch sells are those challenged in this lawsuit, the Welch Grape Juices, as follows:

• 100% Grape Juice

• 100% Juice Red Sangria

• 100% Black Cherry Concord Grape Juice

12.    The typical serving size for each of the Welch Grape Juices is 8 oz., equivalent to 240 mL, though this may differ slightly for single-serve items, like cans and bottles. Each 8 oz. serving of the Welch Grape Juices contains between 34g and 36g of sugar per serving, contributing all or most of the product's calories.

13.    Eight ounces is also the FDA-promulgated Reference Amount Customarily

1  Consumed (RACC) for juice. 81 Fed. Reg. 34,000 (May 27, 2016). RACCs reflect amounts

2  of food customarily consumed per eating occasion and are derived from data from the United

3  States Department of Agriculture's Nationwide Food Consumption Survey and the National

4  Health and Nutrition Examination Survey (NHANES).

5      14.    Since before the Class Period, and despite occasional changes in the design of

6  the products' labels, Welch has marketed the Welch Grape Juices as "supporting" or

7  "promoting" a "healthy heart." Welch knows or has reason to know consumers are likely to

8  regard these representations as important in making a purchasing decision. For example, in a

9  publication on its website titled "Hearty Research on Concord Grape Juice," Welch states

10 that "[m]ore than half of Americans cite heart health as their top health concern."

11     15.    Examples of Welch's heart-healthy representations on the labels of the Welch

12 Grape Juices appear below (depictions are not intended to be complete or chronological).

13             **100% Grape Juice – 64 & 96 Oz.**



3

**100% Grape Juice – 64 Oz.**

 

**100% Grape Juice – 46 Oz.**

 

*Hanson v. Welch Foods Inc.*, No. 3:20-cv-2011
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**100% Grape Juice – 10 Fl. Oz. bottles**







*Hanson v. Welch Foods Inc.*, No. 3:20-cv-2011
CLASS ACTION COMPLAINT




**100% Grape Juice –11.5 Oz. cans**




*Hanson v. Welch Foods Inc.*, No. 3:20-cv-2011
CLASS ACTION COMPLAINT

**100% Grape Juice –11.5 & 12 Oz. bottles**

 

**100% Red Juice Sangria – 64 Oz.**



1

**100% Black Cherry Concord Grape – 64 Fl. Oz.**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



25    16.    Welch's bolstered the heart-healthy message through non-label advertising, such

26  as its use of numerous "info graphics" available on its website, including at a page available

27  at the URL www.welchs.com/health, as well as "heart healthy" recipes using Welch's 100%

28  Grape Juice. Examples appear below.

*Hanson v. Welch Foods Inc.*, No. 3:20-cv-2011
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





*Hanson v. Welch Foods Inc.*, No. 3:20-cv-2011
CLASS ACTION COMPLAINT







*Hanson v. Welch Foods Inc.*, No. 3:20-cv-2011
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





I HEART BENEFITS

Nearly 20 years of science says that, thanks to the Concord grape, 100% grape juice helps support a healthy heart. In fact, Concord grapes deliver many of the same polyphenols and heart-health benefits as red wine.

Discover the Mighty Concord grape. Visit welchs.com/health.



*Hanson v. Welch Foods Inc.*, No. 3:20-cv-2011
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Beyond Red ...**

# Think Purple for Heart Health!

Purple is a cue that fruits and vegetables have plant nutrients called polyphenols that can help promote health, including **heart health**.



## Pump Up the Purple

**3%**

When it comes to enjoying fruits and vegetables, people only eat a small percentage from the purple/blue group.[1]




Eating purple/blue fruits and vegetables is linked to diets with:[2]

Key Nutrients    Added Sugar

## Polyphenol Power with Purple

**Berries** are a **delicious way** to get your **daily dose of purple**, and they **deliver polyphenols** (specifically anthocyanins) not found in many other colors of fruit.[3]

Whether talking berries or other fruits and vegetables, the **darker the purple the more polyphenols** you'll likely find.[3]



## Purple for Heart Health

**Berry polyphenols** can act as **antioxidants** and, according to the Produce for Better Health Foundation, play a role in heart health by supporting **healthy blood vessels**.[4]



Yes, Concord grapes are **berries!**

**Polyphenol Content**

## Go Purple with Concord Grapes



100% grape juice made with Concord grapes **helps support a healthy heart.**[5]

## Did you know?

Many of the **polyphenols** in **dark purple Concord grapes** are the **same** as those found in **red wine**.



## 5 Purple Produce-Packed Ideas

1. Sprinkle **blueberries** or **blackberries** on cereal

2. Add **100% grape juice** to a smoothie

3. Toss **purple cabbage** with salad greens

4. Pump up sides with **purple potatoes** and **eggplant**

5. Poach **purple plums** for a sweet treat





## Enjoy Purple with 8-oz. of Welch's® 100% Grape Juice

More than 40 Concord grapes go into each 8-oz. glass



250mg of polyphenols

High in Vitamin C    2 servings of fruit

NO added sugar



  

welchs.com

References
1. Produce For Better Health Foundation. State of the Plate Study on America's Consumption of Fruits and Vegetables. Wilmington, Delaware. 2003.
2. McGill CR, Wightman JD, Fulgoni S and Fulgoni III VL. Consumption of Purple/Blue Produce is Associated with Increased Nutrient Intake and Reduced Risk for Metabolic Syndrome: Results From the National Health and Nutrition Examination Survey 1999-2002. Am J Lifestyle Med. 2011. 5(3):279-290.
3. U.S. Department of Agriculture - Agricultural Research Service. USDA Database for the Flavonoid Content of Selected Foods Release 3.1. 2013. http://ars.usda.gov/Services/docs.htm?docid=6231. Last Updated: December 2013.
4. Produce For Better Health Foundation. What Are Phytochemicals? Accessed December 20, 2013 from http://www.fruitsandveggiesmorematters.org/what-are-phytochemicals.
5. grapescience.com

*Hanson v. Welch Foods Inc.*, No. 3:20-cv-2011
CLASS ACTION COMPLAINT









1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





*Hanson v. Welch Foods Inc.*, No. 3:20-cv-2011
CLASS ACTION COMPLAINT



## II.   THE SCIENTIFIC EVIDENCE DEMONSTRATES THAT CONSUMING FRUIT JUICE, LIKE THE WELCH GRAPE JUICES, IS UNHEALTHY.

### A.   The Consumption of 100% Fruit Juice Increases the Risk of Cardiovascular Heart Disease

17.   Heart disease is the number one killer in the United States. The scientific literature demonstrates that consumption of fruit juice at amounts typically consumed has deleterious effects on heart health.

18.   In a study published January 2020, researchers set out to determine whether consumption of sugar-containing beverages (SCB), including 100% fruit juice, is associated with cardiometabolic risk (CMR) in preschool children, using data from 2007-2018 from TARGet Kids!, a primary-care, practice-based research network in Canada. After adjusting

17

for sociodemographic, familial and child-related covariates, higher consumption of SCB was significantly associated with elevated CMR scores, including lower HDL "good" cholesterol, and higher triglycerides. In addition, when examined separately, 100% fruit juice was significantly associated with lower HDL cholesterol. The researchers stated that their "findings support recommendations to limit overall intake of SCB in early childhood, in [an] effort to reduce the potential long-term burden of CMR."[1]

19.     Analyzing data from the Danish Diet, Cancer and Health cohort study, representing 57,053 mean and women, aged 50 to 64 years old, researchers found "a tendency towards a lower risk of ACS [acute coronary syndrome] . . . for both men and women with higher fruit and vegetable consumption," but "a higher risk . . . among women with higher fruit juice intake . . . ."[2]

20.     In one study, those who consumed fruit juice daily, versus rarely or occasionally, had significantly higher central systolic blood pressure, a risk factor for cardiovascular disease, even after adjusting for age, height, weight, mean arterial pressure, heart rate, and treatment for lipids and hypertension. [3]

21.     Using aggregate data from three published studies examining sugar-sweetened beverages and 100% fruit juice, researchers "modelled a non-linear dose-response using the best fitting second-order fractional polynomial regression." It showed that consumption of 100% fruit juice of up to 200 mL per day had a mild protective effect on cardiovascular health, but the effect became harmful and increased steeply over 200 mL per day (equivalent

---

[1] Eny, KM, et al., "Sugar-containing beverage consumption and cardiometabolic risk in preschool children." *Prev. Med. Reports* 17 (Jan. 14, 2020).

[2] Hansen, L., et al., "Fruit and vegetable intake and risk of acute coronary syndrome." *British J. of Nutr.*, Vol. 104, p. 248-55 (2010).

[3] Pase, M.P., et al., "Habitual intake of fruit juice predicts central blood pressure." *Appetite*, Vol. 84, p. 658-72 (2015).

to less than 7 ounces), as reflected in the below chart, replicated from the study.[4]



22.     A study published just a few months later, looking at an entirely different set of data, found nearly the identical association with hypertension, a CHD risk factor.[5]



23.     Studies of the cardiovascular effects of added sugar consumption further suggest fruit juice consumption causes increased risk for and contraction of cardiovascular disease,

[4] Khan, T.A., "A lack of consideration of a dose-response relationship can lead to erroneous conclusions regarding 100% fruit juice and the risk of cardiometabolic disease." *European J. of Clin. Nutr.*, Vol. 73, pp. 1556-60 (Sept. 2019).

[5] Liu, Q., et al., "Important Food Sources of Fructose-Containing Sugars and Incident Hypertension: A Systematic Review of Dose-Response Meta-Analysis of Prospective Cohort Studies." *J. Am. Heart Ass'n*, Vol. 8, No. 24 (Dec. 2019).

19

because the free sugars in 100% fruit juice act physiologically identically to added sugars, such as those in sugar-sweetened beverages.

24.     For example, data obtained from NHANES surveys during the periods of 1988-1994, 1999-2004, and 2005-2010, after adjusting for a wide variety of other factors, demonstrate that those who consumed between 10% - 24.9% of their calories from added sugars had a 30% greater risk of cardiovascular disease (CVD) mortality than those who consumed 5% or less of their calories from added sugar. In addition, those who consumed 25% or more of their calories from added sugars had an average 275% greater risk of CVD mortality than those who consumed less than 5% of calories from added sugar. Similarly, when compared to those who consumed approximately 8% of calories from added sugar, participants who consumed approximately 17% - 21% (the 4th quintile) of calories from added sugar had a 38% higher risk of CVD mortality, while the relative risk was more than double for those who consumed 21% or more of calories from added sugar (the 5th quintile). Thus, "[t]he risk of CVD mortality increased exponentially with increasing usual percentage of calories from added sugar," as demonstrated in the chart below.[6]



Figure 1. Adjusted Hazard Ratio (HR) of the Usual Percentage of Calories From Added Sugar for Cardiovascular Disease Mortality Among US Adults 20 Years or Older: National Health and Nutrition Examination Survey Linked Mortality Files, 1988-2006



Histogram of the distribution of usual percentage of calories from added sugar in the population. Lines show the adjusted HRs from Cox models. Midvalue of quintile 1 (7.4%) was the reference standard. The model was adjusted for age, sex, race/ethnicity, educational attainment, smoking status, alcohol consumption, physical activity level, family history of cardiovascular disease, antihypertensive medication use, Healthy Eating Index score, body mass index, systolic blood pressure, total serum cholesterol, and total calories. Solid line indicates point estimates; dashed lines indicate 95% CIs.

_____

[6] Yang, Quanhe, et al., "Added Sugar Intake and Cardiovascular Diseases Mortality Among US Adults," *JAMA*, at E4-5 (pub. online, Feb. 3, 2014).

25.    The NHANES analysis also found "a significant association between sugar-sweetened beverage consumption and risk of CVD mortality," with an average 29% greater risk of CVD mortality "when comparing participants who consumed 7 or more servings/wk (360 mL per serving) with those who consumed 1 serving/wk or less . . . ."[7] The study concluded that "most US adults consume more added sugar than is recommended for a healthy diet. A higher percentage of calories from added sugar is associated with significantly increased risk of CVD mortality. In addition, regular consumption of sugar-sweetened beverages is associated with elevated CVD mortality."[8]

26.    Data from the Nurses' Health Study consistently showed that, after adjusting for other unhealthy lifestyle factors, those who consumed two or more sugar-sweetened beverages per day (280 calories, or 70 grams of sugar or more) had a 35% greater risk of coronary heart disease compared with infrequent consumers.[9]

27.    In another prospective cohort study, it was suggested that reducing sugar consumption in liquids is highly recommended to prevent CVD. Here, consumption of sugary beverages was significantly shown to increase risk of CHD, as well as adverse changes in some blood lipids, inflammatory factors, and leptin.[10]

28.    Fruit juice consumption is also associated with several CHD risk factors. For example, consumption of sugary beverages like 100% fruit juice has been associated with

---

[7] *Id.* at E6.

[8] *Id.* at E8.

[9] Fung, T.T., et al., "Sweetened beverage consumption and risk of coronary heart disease in women." *Am. J. of Clin. Nutr.*, Vol. 89, pp. 1037-42 (Feb. 2009).

[10] Koning, L.D., et al., "Sweetened Beverage Consumption, Incident Coronary Heart Disease, and Biomarkers of Risk in Men." *Circulation*, Vol. 125, pp. 1735-41 (2012).

1  dyslipidemia,[11] obesity,[12] and increased blood pressure.[13]

2  **B.  The Consumption of 100% Fruit Juice Increases the Risk of Type 2**

3  **Diabetes, which is a Strong Risk Factor for Cardiovascular Heart Disease**

4  29.  Type 2 diabetes is a well-known risk factor for cardiovascular disease.

5  30.  Data from the Nurses' Health Study, derived from 71,346 female nurses aged

6  38 to 63, followed for 18 years starting in 1984, demonstrated that for each 1-serving per day

7  increase in fruit juice consumption, risk of type 2 diabetes increased 18%.[14]



11  [11] Elliott S.S., et al., "Fructose, weight gain, and the insulin resistance syndrome." *Am. J. Clin. Nutr.*, Vol. 76, No. 5, pp. 911-22 (2002).

[12] Faith, M.S., et al., "Fruit Juice Intake Predicts Increased Adiposity Gain in Children From Low-Income Families: Weight Status-by-Environment Interaction." *Pediatrics*, Vol. 118 (2006) ("Among children who were initially either at risk for overweight or overweight, increased fruit juice intake was associated with excess adiposity gain, whereas parental offerings of whole fruits were associated with reduced adiposity gain."); Schulze, M.B, et al., "Sugar-Sweetened Beverages, Weight Gain, and Incidence of Type 2 Diabetes in Young and Middle-Aged Women." *JAMA*, Vol. 292, No. 8, pp. 927-34 (2004); Ludwig, D.S., et al., "Relation between consumption of sugar-sweetened drinks and childhood obesity: a prospective, observational analysis." *Lancet*, Vol. 257, pp. 505-508 (2001); Dennison, B.A., et al., "Excess fruit juice consumption by preschool-aged children is associated with short stature and obesity." *Pediatrics*, Vol. 99, pp. 15-22 (1997).

[13] Hoare, E., et al., "Sugar- and Intense-Sweetened Drinks in Australia: A Systematic Review on Cardiometabolic Risk." *Nutrients*, Vol. 9, No. 10 (2017).

[14] Bazzano, L.A., et al., "Intake of Fruit, Vegetables, and Fruit Juices and Risk of Diabetes in Women." *Diabetes Care*, Vol. 31, No. 7, pp. 1311-17 (July 2008).

22

31.     In an analysis of tens of thousands of subjects from three prospective longitudinal cohort studies (the Nurses' Health Study, Nurses' Health Study II, and Health Professionals Follow-up Study), researchers found, after adjusting for BMI, initial diet, changes in diet, and lifestyle covariates, that increasing sugary beverage intake—which included both sugar-sweetened beverages and 100% fruit juice—by half-a-serving per day over a 4-year period was associated with a 16% greater risk of type 2 diabetes.[15]

32.     In another study of subjects from the Nurses' Health Study, Nurses' Health Study II, and Health Professionals Follow-up Study, researchers set out to "determine whether individual fruits are differentially associated with risk of type 2 diabetes," looking at the associated risk with eating three servings per week of blueberries, grapes and raisins, prunes, apples and pears, bananas, grapefruit, oranges, strawberries, cantaloupe, and peaches, plums and apricots, as well as "the same increment" in fruit juice consumption. They found that "[g]reater consumption of specific whole fruits" was "significantly associated with a lower risk of type 2 diabetes, whereas greater consumption of fruit juice is associated with a higher risk." The increased risk was approximately 8% based on three fruit juice servings per week.[16]  Similarly, a meta-analysis of 17 prospective cohort studies showed higher consumption of fruit juice was associated with a 7% greater incidence of type 2 diabetes after adjusting for adiposity.[17]

---

[15] Drouin-Chatier, J., et al., "Changes in Consumption of Sugary Beverages and Artificially Sweetened Beverages and Subsequent Risk of Type 2 Diabetes: Results From Three Large Prospective U.S. Cohorts of Women and Men." *Diabetes Care*, Vol. 42, pp. 2181-89 (Dec. 2019).

[16] Muraki, I., et al., "Fruit consumption and risk of type 2 diabetes: results from three prospective longitudinal cohort studies." *BMJ* (Aug. 28, 2013).

[17] Imamura, F., et al., "Consumption of sugar sweetened beverages, artificially sweetened beverages, and fruit juice and incidence of type 2 diabetes: systematic review, meta-analysis, and estimation of population attributable fraction." *BMJ*, Vol. 351 (2015).

**C.**     **The Consumption of 100% Fruit Juice is Associated with Increased All-Cause Mortality**

33.     In a cohort study of 13,440 black and white adults 45 years and older, observed for a mean of 6 years, each additional 12-oz serving per day of fruit juice was associated with a 24% higher all-cause mortality risk. This was significantly higher than the increased risk associated with *all* sugary beverages, including sugar-sweetened beverages like soda, which was 11% for each additional 12-oz serving per day. The researchers from Emory University, University of Alabama, and the Weill Cornell Medical College concluded their findings "suggest that consumption of sugary beverages, including fruit juices, is associated with all-cause mortality."[18]

**D.**     **Because of the Compelling Evidence that Consuming 100% Fruit Juice is Unhealthy, Authoritative Bodies Recommend Limiting its Consumption**

34.     The American Academy of Pediatrics (AAP) suggests limiting fruit juice consumption to no more than 4 to 6 ounces for young children aged 1 to 6,[19] and no more than 8 fluid ounces for children 7 to 18 years of age, and adults.[20] In addition, both the AAP and Dietary Guidelines for Americans recommend that children be encouraged to consume whole fruit in place of juice.[21]

35.     The most recent Dietary Guidelines for Americans states that "[t]he amounts of

---

[18] Collin, L.J., et al., "Association of Sugary Beverage Consumption With Mortality Risk in US Adults: A Secondary Analysis of Data From the REGARDS Study," *JAMA Network Open* Vol. 2, No. 5 (May 2019).

[19] Am. Academy of Pediatrics, "Healthy Children, Fit Children: Answers to Common Questions From Parents About Nutrition and Fitness." (2011).

[20] Heyman, M.B., et al., "Fruit Juice in Infants, Children, and Adolescents: Current Recommendations." *Pediatrics* Vol. 139, No. 6 (June 2017).

[21] *Id.*; *see also* Auerbach, B.J., et al., "Review of 100% Fruit Juice and Chronic Health Conditions: Implications for Sugar-Sweetened Beverage Policy." *Adv. Nutr.*, Vol. 9, pp. 78-85 (2018).

fruit juice allowed in the USDA Food Patterns for young children align with the recommendation from the American Academy of Pediatrics that young children consume no more than 4 to 6 fluid ounces of 100% fruit juice per day."[22]

36.     The World Health Organization recommends that no more than 10% of an adult's calories, and ideally less than 5%, come from added sugar or from natural sugars in honey, syrups and fruit juice. For a 2,000-calorie diet, 5% is 25 grams: less than in a single serving of the Welch Grape Juices.

## III.   WELCH'S REPRESENTATION THAT THE WELCH GRAPE JUICES HELP SUPPORT A HEALTHY HEART, AND OMISSION OF MATIERAL FACTS IT WAS OBLIGATED TO DISCLOSE, IS FALSE AND MISLEADING

37.     Because the scientific evidence demonstrates that consumption of 100% fruit juice at levels below those typically consumed are associated with increased risk of cardiovascular disease, increased risk of type 2 diabetes (a risk factor for cardiovascular disease), other risk factors for cardiovascular disease, and all-cause mortality, Welch's representation that the Welch Grape Juices "Help[] Promote" or "Help[] Support a Healthy Heart" are literally false, or at least highly misleading.

38.     In representing that the Welch Grape Juices "Help[] Support a Healthy Heart," Welch regularly and intentionally omits material information regarding the dangers of the sugars in its products. Welch is under a duty to disclose this information to consumers because (a) Welch is revealing *some* information about its products—enough to suggest they are healthy—without revealing additional material information, (b) Welch's deceptive omissions concern human health, and specifically the detrimental health consequences of consuming its products, (c) Welch was in a superior position to know of the dangers presented by the sugars in its juices, as it is a global food company whose business depends upon food science and policy, and (d) Welch actively concealed material facts not known to Plaintiff and the class.

---

[22] U.S. Dep't of Health & Human Servs. and U.S. Dept. of Agric., "Dietary Guidelines for Americans 2015 – 2020," at 22 (8th ed.), *available at* https://health.gov/sites/default/files/2019-09/2015-2020_Dietary_Guidelines.pdf.

1

2

## IV.   WELCH'S HEART HEALTH CLAIMS VIOLATE STATE AND FEDERAL REGULATIONS

3

4

5

6

7

8

9

39.   The "heart health" statements on the labels of the Welch Grape Juices violate FDA food labeling regulations, which have been adopted as California's labeling regulations pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et seq.* (the "Sherman Law"). *See id.* § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulations adopted pursuant thereto.").

10

11

12

13

14

40.   First, Welch's heart health statements challenged herein are false and misleading for the reasons described herein, in violation of 21 U.S.C. § 343(a), which deems misbranded any food whose "label is false or misleading in any particular." Welch accordingly also violated California's parallel provision of the Sherman Law. *See* Cal. Health & Safety Code § 110660.

15

16

17

18

19

41.   Second, Welch's heart health statements "fail[ed] to reveal facts that are material in light of other representations made or suggested by the statement[s], word[s], design[s], device[s], or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1). Such facts include the detrimental health consequences of consuming the Welch Grape Juices at typical levels, including increased risk of cardiovascular disease, type 2 diabetes, and death.

20

21

22

23

24

25

26

42.   Third, in making its heart health statements, Welch failed to reveal facts that were "[m]aterial with respect to the consequences which may result from use of the article under" both "[t]he conditions prescribed in such labeling," and "such conditions of use as are customary or usual," in violation of § 1.21(a)(2). Namely, Welch failed to disclose the increased risk of serious chronic disease and death likely to result from the usual consumption of the Welch Grape Juices in the customary and prescribed manner, *i.e.*, at 8 ounces per serving.

27

28

## PLAINTIFF'S RELIANCE & INJURY

43.     Plaintiff Curtis Hanson has been a frequent purchaser of Welch 100% Grape Juice for several years. To the best of his recollection, Plaintiff has been purchasing Welch 100% Grape Juice since at least the beginning of 2016. He purchased Welch 100% Grape Juice approximately once or twice per week from local Safeway stores in Berkeley and San Francisco, California. Plaintiff purchased Welch 100% Grape Juice in substantial part based upon Welch's representation that the product "Helps Support a Healthy Heart," which made the product seem like a healthy choice.

44.     When purchasing Welch 100% Grape Juice, Plaintiff was seeking a product that was healthy to consume, that is, whose consumption would not increase his risk of cardiovascular disease, type 2 diabetes, and death. However, Welch's representation that its 100% Grape Juice "Helps Support a Healthy Heart" was false or at least highly misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the class) because, as described in detail herein, consumption of the Welch Grape Juices at typical levels are associated with *increased* risk of cardiovascular disease, type 2 diabetes, and death.

45.     Plaintiff is not a nutritionist or food scientist, but rather a lay consumer who did not have the specialized knowledge that Welch had regarding the physiological effects of consuming the Welch Grape Juices. At the time of purchase, Plaintiff was unaware of the extent to which consuming 100% fruit juice increases the risk of cardiovascular disease, type 2 diabetes, and death. Plaintiff acted reasonably in relying on Welch's heart-healthy marketing, which Welch intentionally placed on the products' labels to induce average consumers into purchasing the products, and knowing that the claim would be important to such consumers in making purchasing decisions.

46.     The Welch Grape Juices cost more than similar products without misleading labeling, and would have cost less absent the misleading heart health claims. If Welch were enjoined from making the misleading claims, the market demand and price for the products would drop, as it has been artificially and fraudulently inflated due to Welch's use of the

deceptive labeling.

47.     Plaintiff paid more for the Welch 100% Grape Juice, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading labeling statements complained of herein. Class members likewise paid more for the Welch Grape Juices than they otherwise would have. For these reasons, the Welch Grape Juices were worth less than what Plaintiff and the class paid for them. As a result, Plaintiff lost money as a result of Welch's deceptive claims and practices in that he did not receive what he paid for when purchasing the Welch Grape Juices.

48.     Plaintiff has enjoyed Welch's products in the past. If he could be assured through prospective injunctive relief that the Welch Grape Juices are properly labeled, he would consider purchasing Welch Grape Juices in the future.

## CLASS ACTION ALLEGATIONS

49.     Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent a class of all persons in California who, on or after March 23, 2016 (the "Class Period") purchased, for household use and not for resale or distribution, one of the Welch Grape Juices bearing a claim that the product "Helps Promote" or "Helps Support Heart Health."

50.     Plaintiff nevertheless reserves the right to divide into subclasses, expand, narrow, more precisely define, or otherwise modify the class definition prior to (or as part of) filing a motion for class certification.

51.     The members in the proposed class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all class members in a single action will provide substantial benefits to the parties and Court. Fed. R. Civ. P. 23(a)(1).

52.     Questions of law and fact common to Plaintiff and the class (Fed. R. Civ. P. 23(a)(2) include, without limitation:

    a.     Whether Welch's representation that the Welch Grape Juices "Help[] Support Heart Health" is material.

    b.     Whether Welch's representation that the Welch Grape Juices "Help[] Support Heart Health" is likely to mislead a reasonable consumer in light of the

scientific evidence of the health effects of consuming 100% fruit juice.

c.    Whether Welch's conduct violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, the Federal Food, Drug, and Cosmetic Act, 28 U.S.C. §§ 301 *et seq.*, and its implementing regulations, 21 C.F.R. §§ 101 *et seq.*, the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875, *et seq.*, or any other regulation, statute, or law;

d.    Whether Welch's policies, acts, and practices with respect to the Welch Grape Juices were designed to, and did result in the purchase and use of the products by the class members primarily for personal, family, or household purposes;

e.    Whether Welch represented that the Welch Grape Juices have characteristics, uses, or benefits which they do not have, within the meaning of Cal. Civ. Code § 1770(a)(5);

f.    Whether Welch represented that the Welch Grape Juices are of a particular standard, quality, or grade, when they were really of another, within the meaning of Cal. Civ. Code § 1770(a)(7);

g.    Whether Welch advertised the Welch Grape Juices with the intent not to sell it as advertised, within the meaning of Cal. Civ. Code § 1770(a)(9);

h.    Whether Welch represented that the Welch Grape Juices have been supplied in accordance with a previous representation when it has not, within the meaning of Cal. Civ. Code § 1770(a)(16);

i.    Whether through the challenged labels and advertising, Welch made affirmations of fact or promises, or descriptions of the goods, whether they became part of the basis of the bargain, and whether Welch failed to provide goods in conformation with them.

j.    The proper equitable and injunctive relief;

k.    The proper amount of restitution or disgorgement; and

l.    The proper amount of reasonable litigation expenses and attorneys' fees.

53.     Plaintiff's claims are typical of class members' claims in that they are based on the same underlying facts, events, and circumstances relating to Welch's conduct. Fed. R. Civ. P. 23(a)(3).

54.     Plaintiff will fairly and adequately represent and protect the interests of the class, has no interests incompatible with the interests of the class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation, including within the food industry.

55.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each class member is small such that, absent representative litigation, it would be infeasible for class members to redress the wrongs done to them.

56.     Questions of law and fact common to the class predominate over any questions affecting only individual class members.

57.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and may be appropriate for certification "with respect to particular issues" under Rule 23(b)(4).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW,

### CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.*

58.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

59.     The FAL prohibits any statement in connection with the sale of goods "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500.

60.     Welch's representation that the Welch Grape Juices "Help[] Promote" or "Help Support Heart Health" is deceptive in light of the scientific evidence that regular consumption of 100% fruit juice at typical levels is associated with increased risk of cardiovascular disease, risk factors for cardiovascular disease, type 2 diabetes, and mortality.

61.     Welch knew, or reasonably should have known, that the challenged heart health representations were untrue or misleading.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750 *ET SEQ.*

62.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

63.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

64.     Welch's policies, acts, and practices were designed to, and did, result in the purchase and use of the Welch Grape Juices primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

        a.      § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

        b.      § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

        c.      § 1770(a)(9): advertising goods with intent not to sell them as advertised.

        d.      § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

65.     In compliance with Cal. Civ. Code § 1782, Plaintiff sent written notice to Welch of his claims under the CLRA, but Welch failed, after 30 days, to satisfy his demands or to rectify its behavior. Accordingly, Plaintiff, on behalf of himself and the class, seeks injunctive relief, restitution, statutory damages, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

66.     In compliance with Cal. Civ. Code § 1782(d), an affidavit of venue is filed concurrently with the Complaint.

31

*Hanson v. Welch Foods Inc.*, No. 3:20-cv-2011
CLASS ACTION COMPLAINT

**THIRD CAUSE OF ACTION**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW,**

**CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.***

67.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

68.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200.

**Fraudulent**

69.    Welch's representation that the Welch Grape Juices "Help[] Promote" or "Help[] Support Heart Health" is likely to deceive reasonable consumers in light of the scientific evidence that regular consumption of 100% fruit juice at typical levels is associated with increased risk of cardiovascular disease, risk factors for cardiovascular disease, type 2 diabetes, and mortality.

**Unfair**

70.    Welch's conduct with respect to the labeling, advertising, and sale of the Welch Grape Juices was unfair because Welch's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

71.    Welch's conduct with respect to the labeling, advertising, and sale of the Welch Grape Juices was also unfair because it violated public policy as declared by specific constitutional, statutory or regulatory provisions, including the False Advertising Law, the Federal Food, Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

72.    Welch's conduct with respect to the labeling, advertising, and sale of the Welch Grape Juices was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

**Unlawful**

73.     The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

        a.     The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

        b.     The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; and

        c.     The Federal Food, Drug, and Cosmetic Act, 28 U.S.C. §§ 301 *et seq.*, and its implementing regulations, 21 C.F.R. §§ 101 *et seq.*; and

        d.     The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875, *et seq.*

## FOURTH CAUSE OF ACTION

### Breach of Express Warranty

74.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

75.     Through the labels of Welch Grape Juices bearing heart health claims, Welch made affirmations of fact or promises, and made descriptions of goods, which formed part of the basis of the bargain, in that Plaintiff and the class purchased the products in reasonable reliance on the statement that each Welch Grape Juice "Helps Promote" or "Helps Support Heart Health." Cal. Com. Code § 2313(1).

76.     Welch breached its express warranties by selling products that do not meet the above affirmations and product descriptions because they are not heart healthy, but in fact present increased risk of cardiovascular disease, risk factors for cardiovascular disease, type 2 diabetes, and mortality with regular consumption.

77.     That breach actually and proximately caused Plaintiff and the class injury in the form of the lost purchase price they paid for the Welch Grape Juices bearing heart health claims.

78.     Plaintiff notified Welch of the breach prior to filing the lawsuit and prior to asserting a claim for breach, but Welch failed to rectify the breach.

79. As a result, Plaintiff seeks, on behalf of himself and other class members, actual damages arising as a result of Welch's breaches of express warranty.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

80. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

81. Welch, through its acts and omissions set forth herein, in the sale, marketing and promotion of Welch Grape Juices bearing heart health claims, made representations to Plaintiff and the class that the products are "Heart Health[y]." Plaintiff and the class bought the Welch Grape Juices bearing the heart health claims manufactured, advertised, and sold by Welch as described herein.

82. Welch is a merchant with respect to the goods of this kind which were sold to Plaintiff and the class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

83. However, Welch breached that implied warranty in that Welch Grape Juices are not heart-healthy, as set forth in detail herein.

84. As an actual and proximate result of Welch's conduct, Plaintiff and the class did not receive goods as impliedly warranted by Welch to be merchantable, in that they did not conform to promises and affirmations made on the container or label of the goods. *See* Cal. Com. Code § 2314(2)(f).

85. Plaintiff notified Welch of the breach prior to filing the lawsuit and prior to asserting a claim for breach, but Welch failed to rectify the breach.

86. As a result, Plaintiff seeks, on behalf of himself and other class members, actual damages arising as a result of Welch's breaches of implied warranty.

### **PRAYER FOR RELIEF**

87. Wherefore, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Welch as to each and every cause of action, and the following remedies:

a.      An Order certifying this as a class action, appointing Plaintiff and his counsel to represent the class, and requiring Welch to pay the costs of class notice;

b.      An Order enjoining Welch from labeling, advertising, or packaging the Welch Grape Juices with the challenged heart health claims identified herein;

c.      An Order compelling Welch to conduct a corrective advertising campaign to inform the public that the Welch Grape Juices were deceptively marketed;

d.      An Order enjoining Welch's longstanding policy, practice, and strategy of marketing the Welch Grape Juices with misleading heart health claims;

e.      An Order requiring Welch to pay restitution to restore funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the UCL, FAL, or CLRA;

f.      An Order requiring Welch to pay all statutory, compensatory, and punitive damages permitted under the causes of action alleged herein;

g.      An Order requiring Welch to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

h.      Pre- and post-judgment interest;

i.      Costs, expenses, and reasonable attorneys' fees; and

j.      Any other and further relief the Court deems necessary, just, or proper.

### **JURY DEMAND**

88.    Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 23, 2020              /s/ Jack Fitzgerald

                                   **THE LAW OFFICE OF JACK**
                                   **FITZGERALD, PC**
                                   JACK FITZGERALD
                                   *jack@jackfitzgeraldlaw.com*
                                   TREVOR M. FLYNN
                                   *trevor@jackfitzgeraldlaw.com*
                                   MELANIE PERSINGER

35

1   *melanie@jackfitzgeraldlaw.com*
2   Hillcrest Professional Building
3   3636 4th Ave., Ste. 202
    San Diego, CA 92103
4   Phone: (619) 692-3840
    Fax: (619) 353-0404
5
    ***Counsel for Plaintiff***
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Hanson v. Welch Foods Inc.*, No. 3:20-cv-2011
CLASS ACTION COMPLAINT