UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS HANSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WELCH FOODS INC.,<br><br>　　　　Defendant. | Case No. 20-cv-02011-JCS<br><br>**ORDER REGARDING MOTION TO DISMISS**<br><br>Re: Dkt. No. 8 |

## I. INTRODUCTION

Plaintiff Curtis Hanson asserts consumer protection and breach of warranty claims under California law based on his allegations that Defendant Welch Foods Inc. ("Welch's") falsely represented that certain grape juice products support heart health when they in fact increase the risk of heart disease. Welch's moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court finds the matter suitable for resolution without oral argument and VACATES the hearing previously set for 9:30 AM on July 10, 2020. The case management conference previously set for the same time is CONTINUED to 2:00 PM the same day.

For the reasons discussed below, Welch's motion is GRANTED in part, and Hanson's consumer protection claims under California's False Advertising Law ("FAL"), Consumer Legal Remedies Act ("CLRA"), and Unfair Competition Law ("UCL") are DISMISSED with leave to amend. The motion is DENIED as to Hanson's claims for breach of express and implied warranty. Hanson may file an amended complaint no later than July 24, 2020.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II.  BACKGROUND

### A.  Allegations of the Complaint

Because a plaintiff's allegations are generally taken as true in resolving a motion to dismiss under Rule 12(b)(6), this section summarizes the allegations of Hanson's complaint as if true.  Nothing in this order should be construed as resolving any issue of fact that might be disputed at a later stage of the case.

Welch's sells fruit juice, and prominently represents on the labels of three products—100% Grape Juice, 100% Juice Red Sangria, and 100% Black Cherry Concord Grape Juice—that each product "Helps Support a Healthy Heart," or on some packaging, "Helps Promote a Healthy Heart."  Compl. ¶¶ 1, 14–15.  The typical serving size for Welch's grape juice products is eight ounces, which contains between thirty-four and thirty-six grams of sugar, contributing most if not all of the product's calories.  *Id.* ¶ 12–13.  Other non-label advertisements on Welch's website also indicate that Welch's grape juice products support heart health.  *Id.* ¶ 16.

According to Hanson, however, fruit juices in fact increase the risk of cardiovascular disease, type 2 diabetes, and all-cause mortality when consumed in typical quantities.  *Id.* ¶ 2.  Hanson cites studies linking consumption of fruit juice to increased cardiovascular risk in preschool children, increased risk of acute coronary syndrome in women, higher central systolic blood pressure, harm to overall cardiovascular health, increased hypertension, and type-2 diabetes (which Hanson alleges is a "well-known risk factor for cardiovascular disease"), as well as an increase in all-cause mortality.  *Id.* ¶¶ 18–22, 30–33.  Some of those studies only showed risks when fruit juice is consumed daily in quantities above a given threshold, but that threshold is lower than the typical serving size of Welch's products.  *See id.* ¶¶ 21–22.  Hanson also cites studies showing similar risks from sugary beverages generally, and alleges that the naturally occurring sugar in fruit juice "act physiologically identically to added sugars."  *Id.* ¶¶ 23–28.  Hanson notes that dietary guidance from the American Academy of Pediatrics, the federal government, and the World Health Organization recommend limiting consumption of fruit juice.  *Id.* ¶¶ 34–36.  Based on those alleged risk factors, Hanson asserts that Welch's labeling regarding heart health is "literally false, or at least highly misleading," that Welch's has a duty to disclose

2

the risks of fruit juice to heart health, and that its labeling violates California and federal law. *Id.* ¶¶ 37–42.

Hanson has purchased Welch's 100% Grape Juice once or twice per week since at least the beginning of 2016. *Id.* ¶ 43. His decision to purchase that product was "in substantial part based upon Welch's representation that the product 'Helps Support a Healthy Heart,' which made the product seem like a healthy choice." *Id.* Hanson was not aware of the risks associated with drinking fruit juice. *Id.* ¶ 45. But for the purportedly misleading labeling at issue, Hanson would not have purchased Welch's 100% Grape Juice, or would have only been willing to pay less for it. *Id.* ¶ 47. Hanson alleges that the Welch's products at issue cost more than similar products without similar labeling, and that the market price for those products has been artificially inflated by Welch's labeling. *Id.* ¶ 46.

Hanson seeks to represent a class consisting of all individuals in California who purchased any of the three products at issue with labels stating that they support or promote heart health since March 23, 2016. *Id.* ¶ 49. He asserts the following claims: (1) violation of California's FAL, *id.* ¶¶ 58–59 (citing Cal. Bus. & Prof. Code §§ 17500 et seq.); (2) violation of California's CLRA, *id.* ¶¶ 62–66 (citing Cal. Civ. Code §§ 1750 et seq.); (3) violation of the "fraudulent," "unfair", and "fraudulent" prongs of California's UCL, *id.* ¶¶ 67–73 (citing Cal. Bus. & Prof. Code §§ 17200 et seq.); (4) breach of express warranty, *id.* ¶¶ 74–79 (citing Cal. Com. Code § 2313(1)); and (5) breach of the implied warranty of merchantability, *id.* ¶¶ 80–86 (citing Cal. Com. Code § 2314(2)(f)).

### B. Parties' Arguments

#### 1. Welch's Motion

Welch's moves to dismiss all claims on the basis that Hanson has not satisfied the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure for claims sounding in fraud. Mot. (dkt. 8) at 1. Two introductory sections of the motion dispute the merits of Hanson's allegations, and assert that the grape juice products at issue in fact support heart health, although Welch's appears to recognize that such factual disputes are no basis for a motion under Rule 12(b)(6). *See id.* at 1–6. While Welch's asserts in a footnote that the Court may

consider scientific papers cited in Hanson's complaint under the doctrine of incorporation by reference, and that portions of those papers cutting against Hanson's conclusions render his claims "not only implausible but untenable," Welch's does not tie that assertion to any particular argument for dismissal. *See id.* at 4 n.2.

Welch's argues that Hanson has not established standing under California law because he has not alleged reliance on any particular representation by Welch's. *Id.* at 8–9. Welch's briefly discusses a case addressing the degree of causation required for Article III standing, although its motion does not seek dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) or otherwise address the requirements of constitutional standing. *Id.* at 9.

Welch's contends that Hanson has not alleged with particularity "what" he purchased, because he only alleges that he purchased one of the three products at issue for the class he seeks to represent, and because the complaint does not identify the container size or sizes of Welch's 100% Grape Juice that Hanson bought. *Id.* at 9–10. Welch's argues that without that information, the "math" of typical serving sizes and how often Hanson allegedly bought grape juice "simply does not add up," because it is possible that Hanson was buying the largest available containers of juice and therefore consuming more than the typical serving size per day. *Id.* at 9.

Welch's also argues that Hanson has not sufficiently alleged "when" he saw any of the statements at issue, which Welch's contends is relevant not only for statute of limitations issues (although Welch's does not argue that this case should be dismissed as untimely), but also to determine whether Hanson already knew of the materials on which he now relies for his position that fruit juice is unhealthy, or whether Hanson had been "advised by a health care professional to moderate his intake of sugar from all sources due to some idiosyncratic aspect of his health." *Id.* at 10–12.

Welch's argues that Hanson has not identified "where" he saw the advertisements at issue—a question that Welch's describes as "all-important," with no citation to authority or explanation of why the answer would be relevant to this case. *Id.* at 12–13.

Welch's contends that Hanson has not sufficiently explained "how" Welch's advertising created a price premium, because Hanson does not identify particular comparable products or

specify whether such products contained the same percentage of Concord grape juice, which Welch's characterizes as a premium ingredient. *Id.* at 13–14. Welch's also argues that Hanson cannot proceed on a claim that Welch's advertising shifted the demand curve for the products at issue unless he alleges either that the messaging was consistently included on product labeling through the limitations period or that the demand curve shifted each time the messaging was included or not included on the labels. *Id.* at 14.[2]

Finally, Welch's argues that Hanson's warranty claims must be dismissed because, by failing to allege that he in fact suffered heart disease in the years that he has consumed Welch's product, he has not alleged either breach of any express warranty or that the product is unhealthy and therefore unmerchantable.

### 2. Hanson's Opposition Brief

Hanson contends that because fraud is not an essential element inherent to any of his claims, the Rule 9(b) pleading standard applies only to allegations regarding Welch's purported misrepresentations. Opp'n (dkt. 15) at 1–2. Hanson asserts that he has sufficiently alleged the "who, what, when, where, and how" of Welch's allegedly false advertising. *Id.* at 2.

For the question of "what," Hanson notes that he alleges having purchased Welch's 100% Grape Juice product, and argues that courts have allowed plaintiffs to represent purchasers of other goods so long as the labels are similar and there is no material difference between the products. *Id.* at 6–7. Hanson contends that minor differences over time in products and packaging, including the various container sizes that Welch's sold, are not material, and that lack of medical harm is not relevant to his claim that he overpaid for the product. *Id.* at 8–9.

Hanson argues that his allegation that he has purchased Welch's product on a regular basis since at least the beginning of 2016 satisfy the question of "when" a misrepresentation occurred. *Id.* at 9–10. According to Hanson, the fact that he began purchasing the product before the March 2016 cutoff for relevant statutes of limitations does not affect the validity of his claims, because

---

[2] This section of Welch's motion also includes the immaterial (for Rule 12(b)(6)) argument that, "[i]f and when this case ever gets to the merits, Welch's is quite confident it will negate any theory of premium Plaintiff concocts, because Welch's does not set retail prices, and thus does not have any ability to increase prices when it periodically employs heart health messaging." Mot. at 14.

courts have treated recurring purchases based on ongoing alleged misrepresentations as continuing violations. *Id.* at 10–11. To the extent Welch's argues that Hanson must allege when he learned that fruit juice is purportedly detrimental to heart health, Hanson contends that his allegation that he lacked knowledge of the extent of such harm at the time of purchase is sufficient. *Id.* at 11.

For "where," Hanson asserts that his "claims are based on Welch's label statements," and that therefore "any reliance he had on non-label advertising communicating the same message is not necessary to state a claim." *Id.* He notes that he does not allege reliance on advertising other than the product labels, and states that Welch's "need not prepare an Answer addressing any such allegation." *Id.*

Hanson argues that for Rule 9(b), the question of "how" goes to the reasons why a statement is inaccurate or misleading, and does not require an economic model of damages. *Id.* at 12. He contends that his allegations regarding price premiums and his reasons for buying the product are sufficient at the pleading stage, and that he is not required to rule out potential alternative methods of showing economic damages. *Id.* at 12–13.

Hanson contends that his warranty claims do not require a showing of any physical harm as a result of drinking Welch's juice, and that it is instead sufficient that the product did not provide the health benefits advertised, as courts have recognized in other cases based on similar advertising. *Id.* at 14–15. For his implied warranty claim, Hanson relies on section 2314(2)(f) of the California Commercial Code, which provides that products are unmerchantable if they do not conform to promises and statements of fact on their labels. *Id.* at 15 (citing cases treating implied warranty claims based on that statute as coextensive with express warranty claims).

Hanson argues that other courts, including in this district, have found allegations similar to those here sufficient. *Id.* at 4. He contends that the studies he cites regarding negative effects of fruit juice and sugar generally are sufficient, particularly at the pleading stage, without need for studies specifically addressing Welch's grape juice products. *Id.* at 3 n.2. Hanson argues that he has standing based on his allegations that he relied on Welch's representation that the 100% Grape Juice product helps support a healthy heart, and that he would not have purchased the product at the same price but for that advertising. *Id.* at 5–6.

### 3. Welch's Reply

Welch's argues in its reply that Hanson's opposition brief supplies some of the details that Welch's contends were omitted from the complaint, including that Hanson only purchased the 100% Grape Juice product and only relied on the label for that product, but that Hanson should be required to amend his complaint to plead those facts rather than merely asserting them in argument. Reply (dkt. 16) at 1, 3. Welch's construes Hanson's brief as indicating that the harms caused by added sugar are irrelevant to this case, because Hanson does not personally suffer from any of the conditions linked to added sugar, and repeats the argument from its motion that Hanson's claims depend on actual manifestation of heart problems. *Id.* at 1, 4. If Hanson intends to pursue claims based solely on economic injuries, Welch's contends that he must omit any reference to potential physical injuries from any amended complaint. *Id.* at 4–5. In a lengthy footnote, Welch's suggests that resolving only economic injuries might preclude certifying a class that includes consumers who have experienced personal injuries. *Id.* at 4 n.4.

Welch's argues that the "structure/function" claim on its label regarding supporting a healthy heart is distinguishable from general assertions of healthfulness, and that cases Hanson cites dealing with the latter are therefore irrelevant to this case. *Id.* at 2, 7–9. Welch's asserts in a footnote, without citation to authority, that any general healthfulness claim here is foreclosed by the federal Dietary Guidelines for Americans, referencing portions of its motion noting that the Guidelines include juice among the "primary beverages" that should be consumed, but similarly lacking any authority holding that the Guidelines bar any claim. *Id.* at 7 n.6; *see* Mot. at 1–2, 12.

According to Welch's, Hanson should be required to identify in his complaint the particular "package configurations" he purchased, since he will be required to do so in his initial disclosures and thus gains nothing by omitting that information from the complaint. *Id.* at 5. Welch's argues that the packaging is relevant both to determine what representations were included on the labels, and to compare Hanson's consumption with the studies he cites finding effects only from certain dosages of fruit juice. *Id.* at 5–6.

### III. ANALYSIS

#### A. Legal Standard Under Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

#### B. Pleading Fraud Under Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure sets a heightened pleading standard for

8

claims based on fraud.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The Ninth Circuit has held that in order to meet this standard, a "complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity," *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993), or in other words, "'the who, what, when, where, and how' of the misconduct charged," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted).  "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'"  *Kearns*, 567 F.3d at 1124 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (ellipsis in original).

### C. Hanson Must Identify the Representations at Issue for False Advertising

The parties' briefs address Hanson's consumer protection claims under the FAL, CLRA, and UCL together, and Hanson does not dispute that he must satisfy the heightened pleading standard of Rule 9(b) in alleging the purportedly false or misleading representations on which he bases these false advertising claims.

Welch's is correct that Hanson's complaint—unlike his opposition brief—fails to identify one of the key factual bases for his claims: the representations on which he personally relied.  Hanson alleges that he purchased Welch's grape juice "in substantial part based upon Welch's representation that the product 'Helps Support a Healthy Heart,'" but his complaint does not specify where he saw that statement.  Compl. ¶ 43.  In his opposition brief, Hanson states that he relied on the product labels, and attempts to tie that position to allegations that reference the product labels but do not themselves clearly or directly state that Hanson relied on the labels rather than other advertising.  Opp'n at 2 (quoting Hanson's allegation that he "acted reasonably in relying on Welch's heart-healthy marketing, which Welch intentionally placed on the products' labels," Compl. ¶ 45, and that he "paid more for the Welch 100% Grape Juice, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading labeling statements complained of herein").  Arguments in a brief are not a substitute for allegations in a complaint, and while Hanson's allegations taken together might support an inference that he relied

on the labels rather than other advertising for the more lenient pleading standard of Rule 8(a), they do not provide the degree of specificity required under Rule 9(b). Welch's motion to dismiss Hanson's claims under the FAL, CLRA, and UCL is therefore GRANTED, with leave to amend to specify that Hanson saw and relied on the 100% Grape Juice product labels on the occasions that he purchased that product.[3]

Hanson's allegations are otherwise sufficient. As Welch's concedes, he alleges *who* the relevant parties are: Hanson is asserting claims based on Welch's representations regarding its products. He alleges *what* he purchased—Welch's 100% Grape Juice, *see* Compl. ¶ 43—and while he does not specifically address whether he purchased the other two products for which he seeks to represent a class, the lack of any allegation that he in fact purchased them indicates that he is not basing his claims on any such purchase. Whether the products are sufficiently similar that Hanson can represent absent class members who purchased those other products is an issue for class certification. Hanson alleges *where* he purchased Welch's product, at Safeway stores in Berkeley and San Francisco. *Id.* He alleges *when* he purchased the product, once or twice each week since at least 2016. *Id.* And he alleges *how* Welch's representations misled him, in that they indicated the product was healthy, when, according to Hanson, the product in fact increased consumers' risk of cardiovascular disease and related health issues. *Id.* ¶¶ 43–44. These allegations are sufficient to satisfy Rule 9(b).

Hanson alleges that he was damaged in that he paid more for the product than he would have if it had not been advertised as supporting heart health, or that he might not have purchased the product at all. *Id.* ¶ 47. Such economic injury is cognizable under California consumer protection law. Hanson need not allege that he in fact suffered the heart conditions for which he

---

[3] Without allegations that Hanson relied on other representations alleged in the complaint, such as internet marketing, there appears to be some confusion regarding the relevance of such representations. Hanson states in his brief that because he "does not allege his reliance on such advertising, [Welch's] need not prepare an Answer addressing any such allegation." Opp'n at 11. Welch's construes that passage as a concession that allegations of those representations are irrelevant and should not have been included in the complaint. Reply at 1. The Court understands Hanson's position to be only that Welch's need not answer a nonexistent allegation that Hanson *relied* on non-label advertising. The Court declines to address whether the existence of such non-label advertising on which Hanson himself did not rely is relevant to include in an amended complaint.

alleges Welch's product increased his risk, or any other physical harm.  Although Hanson alleges that Welch's products are harmful, the crux of his claim is not that harm per se, but rather Welch's purportedly false advertising that the products are beneficial.

Hanson also need not, at the pleading stage, provide a detailed economic model of how Welch's advertising increased the price of the product.  His allegations that it did so are sufficiently plausible to survive a motion to dismiss.  *See id.* ¶ 46.  Regardless, the fact that Hanson personally would have valued the product lower had it not included purportedly false representations regarding heart health, *id.* ¶ 47, is sufficient to allege injury and damages.

Welch's briefs include a number of arguments more appropriate for class certification, summary judgment, or trial—as Welch's itself acknowledges in some instances.  *E.g.*, Reply at 4 (asserting that an "issue of personal injury doubtless will become highly significant at the class certification stage").  Such previews of disputes that might occur later in the case do not assist the Court in resolving this motion, but instead tend to obfuscate the issues for which Welch's in fact seeks a decision.  It is not clear, for example, whether Welch's seeks a ruling that the inclusion of juice in the Dietary Guidelines for Americans forecloses a claim based on purported misrepresentation of Welch's products' helpfulness, or if any authority supports such an argument.  *See, e.g.*, Reply at 7 (asserting that a particular "argument is not available to [Hanson] with respect to the Products, because they qualify to be described as healthy under the federal government's *Dietary Guidelines for America*," without citation to any supporting authority).  If further motions are necessary in this case, Welch's is encouraged to focus its briefing on arguments appropriate for the specific procedural posture at hand, and to support such arguments with citations to case law or other legal authority.

### D. Hanson Sufficiently Alleges Breach of Warranty

"[T]o prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l., Inc.* 180 Cal. App. 4th 1213, 1227 (2010) (quoting *Keith v. Buchanan*, 173 Cal. App. 3d 13, 20 (1985)).  The buyer's reliance is not an element of such a claim.  *Id.*

11

Welch's contends that Hanson has alleged "no 'promise' of . . . 'general healthiness,'" and that he instead bases his claims "upon Welch's very specific structure/function claim." Reply at 9. There is very little "specific" about representations that a product "helps support (or promote) a healthy heart." Drawing reasonable inferences in Hanson's favor, as the Court must on the pleadings, such representations are at least amenable to an interpretation that the product tends to improve overall cardiovascular health. Hanson has alleged that it does not, and instead increases risk of adverse cardiovascular effects when consumed in the typical serving size. He has therefore alleged breach.

In *Hadley v. Kellogg Sales Company*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017), Judge Koh considered claims based on a large number of representations that Kellogg made about several of its products, and parsed which statements were actionable as warranties supporting a claim for breach as opposed non-actionable puffery, truthful statements, or claims preempted by FDA regulations. Statements that a given product was "heart healthy" or "does your heart good" were among the representations that Judge Koh held could support a claim for breach of warranty. *See Hadley*, 273 F. Supp. 3d at 1075–76, 1085–86, 1094. The Court discerns no meaningful difference between those statements and the representations at issue here that Welch's product "helps support a healthy heart."

Welch's asserts that Hanson must have suffered from the particular health conditions for which he alleges Welch's product increased his risk in order to state a claim for breach of warranty, but cites no case so holding. Mot. at 15; Reply at 7–9. Courts have routinely allowed express warranty claims to proceed based on purportedly false representations that products were healthy, without requiring allegations that a plaintiff suffered physical harm. *Hadley*, 273 F. Supp. 3d at 1092–95; *Hunter v. Nature's Way Prods., LLC*, No. 16cv532-WQH-BLM, 2016 U.S. Dist. LEXIS 107092, at *25 (S.D. Cal. Aug. 12, 2016); *Boswell v. Costco Wholesale Corp.*, No. SA CV 16-0278-DOC (DFMx), 2016 U.S. Dist. LEXIS 73926, at *29–31 (C.D. Cal. June 6, 2016); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1117–18 (S.D. Cal. 2011). This case differs from some of those decisions (but not *Hadley*) in that the representation of healthfulness is tied to a particular organ, the heart. The fact remains, however, that the statements on which Hanson bases his claims

were not merely warranties that a product was free from defect or would not cause harm, but—at least when construed in Hanson's favor for the purpose of the present motion—representations that the product conferred a benefit, which Hanson alleges it did not in fact provide. The Court DENIES Welch's motion to dismiss Hanson's express warranty claim.

Hanson asserts his claim for breach of implied warranty under section 2314(2)(f) of the California Commercial Code, which provides that in order to be merchantable, goods must "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f). Such a claim mirrors a claim for breach of express warranty. *Hadley*, 273 F. Supp. 3d at 1096. Welch's motion to dismiss this claim is therefore DENIED for the same reasons as the express warranty claim.

## IV. CONCLUSION

For the reasons discussed above, Welch's motion is GRANTED in part based on Hanson's failure to identify the particular representations on which he relied, and Hanson's consumer protection claims under the FAL, CLRA, and UCL are DISMISSED with leave to amend. The motion is DENIED as to Hanson's claims for breach of express and implied warranty. Hanson may file an amended complaint no later than July 24, 2020.

**IT IS SO ORDERED.**

Dated: July 6, 2020

JOSEPH C. SPERO
Chief Magistrate Judge