1  **FITZGERALD JOSEPH LLP**
   JACK FITZGERALD (SBN 257370)
2  *jack@fitzgeraldjoseph.com*
   TREVOR M. FLYNN (SBN 253362)
3  *trevor@jackfitzgeraldlaw.com*
   MELANIE PERSINGER (SBN 275423)
4  *melanie@jackfitzgeraldlaw.com*
   2341 Jefferson Street, Suite 200
5  San Diego, California 92110
   Phone: (619) 215-1741
6
7  ***Counsel for Plaintiff***

8

9

10

11

12                    **UNITED STATES DISTRICT COURT**
13                   **NORTHERN DISTRICT OF CALIFORNIA**

14  | CURTIS HANSON, on behalf of himself, all others similarly situated, and the general public, | Case No. 3:20-cv-02011-JCS |
15  | | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |
    | Plaintiff, | |
16  | v. | |
17  | | Date:      November 12, 2021, 9:30 a.m. |
    | WELCH FOODS INC., | Judge:     Hon. Joseph C. Spero |
18  | Defendant. | Location:  Courtroom F – 15th Floor |

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

NOTICE OF MOTION.........................................................................................................1

ISSUES TO BE DECIDED ..................................................................................................1

MEMORANDUM OF POINTS & AUTHORITIES..........................................................1

    I.      INTRODUCTION .................................................................................1

    II.     PROCEDURAL HISTORY & SETTLEMENT NEGOTIATIONS .......................2

    III.    THE SETTLEMENT .............................................................................3

          A.     The Settlement Class.................................................................3

          B.     Benefits for the Settlement Class ...................................................4

                 1.     Welch will Establish a $1.5 Million Non-Reversionary Settlement Fund.......4

                        a.     Class Member Claims ..................................................4

                        b.     Notice and Administration Costs .....................................4

                        c.     Attorney's Fees, Costs, and Class Representative Service Award.......4

                 2.     Injunctive Relief...................................................................5

                 3.     Class Notice and Claims Administration ......................................5

          C.     The Release ...........................................................................5

          D.     Opting Out ...........................................................................6

          E.     Objecting.............................................................................6

    IV.    TIMELINE..........................................................................................7

    V.     ARGUMENT......................................................................................7

i

A.    The Court Should Certify the Settlement Class ............................................... 7

    1.    The Requirements of Rule 23(a) are Satisfied .................................. 7

        a.    Numerosity ...................................................................... 8

        b.    Commonality ................................................................... 8

        c.    Typicality ....................................................................... 8

        d.    Adequacy ........................................................................ 9

    2.    The Requirements of Rule 23(b)(3) are Satisfied ......................... 10

        a.    Predominance ................................................................ 10

        b.    Superiority .................................................................... 13

B.    The Court Should Approve the Proposed Settlement ................................. 13

    1.    The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations ................................................................. 13

    2.    The Settlement Does Not Grant Preferential Treatment Improperly ............. 14

    3.    The Settlement Falls within the Range of Possible Approval ....................... 15

        a.    The *Churchill Village* Factors Favor Preliminary Approval ............. 15

        b.    The Monetary Relief is Fair in Relation to Potential Damages ................................................................. 19

        c.    The Settlement's Injunctive Relief is Appropriate and Meaningful ............................................................... 20

        d.    The Court will be Empowered to Determine Reasonable Fees, Costs, and Service Awards ...................................... 20

    4.    The Settlement has No Obvious Deficiencies .............................. 21

C.    The Court Should Approve the Class Notice and Notice Plan ................................. 21

VI.    CONCLUSION ........................................................................... 22

ii

1

## **TABLE OF AUTHORITIES**

2

**Cases**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
    2018 WL 8949777 (N.D. Cal. Oct. 15, 2018)................................................................12

*Allen v. Hyland's, Inc.*,
    No. 12-cv-1150 DMG (MANx) (C.D. Cal.) ................................................................16

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................................10, 11

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015)................................................................................18

*Bradach v. Pharmavite, LLC*,
    735 Fed. Appx. 251 (9th Cir. 2018)............................................................................11

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ....................................................................................21

*Broomfield v. Craft Brew Alliance, Inc.*,
    2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ..............................................................12

*Bruno v. Quten Research Inst., LLC*,
    2013 WL 990495 (C.D. Cal. Mar. 13, 2013) ..............................................................20

*Butler v. Porsche Cars N. Am., Inc.*,
    2017 WL 1398316 (N.D. Cal. Apr. 19, 2017) ............................................................12

*Castro v. Paragon Indus., Inc.*,
    2020 WL 1984240 (E.D. Cal. Apr. 27, 2020) ............................................................11

*Chevron Envt'l. Mgmt. Co. v. BKK Corp.*,
    2013 WL 5587363 (E.D. Cal. Oct. 10, 2013) ............................................................19

*Churchill Village v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ......................................................................................15

*Cortes v. Nat'l Credit Adjusters, L.L.C.*,
    2020 WL 3642373 (E.D. Cal. July 6, 2020) ..............................................................11

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980)....................................................................................................13

*Dickey v. Advanced Micro Devices, Inc.*,
    2019 WL 4918366 (N.D. Cal. Oct. 4, 2019)..............................................................21

iii

*E.E.O.C. v. Kovacevich "5" Farms*,
    2007 WL 1174444 (E.D. Cal. Apr. 19, 2007) .................................................................. 8

*Ellis v. Costco Wholesale Corp.*,
    285 F.R.D. 492 (N.D. Cal. 2012) ..................................................................................... 9

*Farar v. Bayer AG*,
    No. 14-cv-4601 (N.D. Cal.) ............................................................................................ 16

*Gaudin v. Saxon Mortg. Servs., Inc.*,
    2015 WL 4463650 (N.D. Cal. July 21, 2015) .............................................................. 18

*Hadley v. Kellogg Sales Co.*,
    2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) ............................................................... 3

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018) ........................................................................... 9

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    2016 WL 4992504 (S.D. Ill. Sept. 16, 2016) ................................................................. 8

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 8

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ........................................................................................... 9

*Hanson v. Welch Foods Inc.*,
    470 F. Supp. 3d 1066 (N.D. Cal. 2020) ..................................................................... 1, 2

*Haralson v. U.S. Aviation Servs. Corp.*,
    383 F. Supp. 3d 959 (N.D. Cal. 2019) .......................................................................... 21

*Harris v. Vector Mktg. Corp.*,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ............................................................. 14

*Heim v. Heim*,
    2014 WL 1340063 (N.D. Cal. Apr. 2, 2014) ............................................................... 19

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ........................................................................................... 6

*Hilsley v. Ocean Spray Cranberries, Inc.*,
    2020 WL 520616 (S.D. Cal. Jan. 31, 2020)................................................................... 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ......................................................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Hyundai & Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) ................................................................. 10, 11

*In re Janney Montgomery Scott LLC Fin. Consulting Litig.*,
   2009 WL 2137224 (E.D. Pa. July 16, 2009) .......................................... 11

*In re Linerboard Antitrust Litig.*,
   305 F.3d 145 (3d Cir. 2002) ................................................................... 10

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................. 18, 19

*In re Mercury Interactive Corp. Secs. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ................................................................... 7

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ............................................................... 21

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ................................................. 12

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................. 21

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   252 F.R.D. 83 (D. Mass. 2008) ............................................................. 19

*In re Seagate Tech. LLC Litig.*,
   2019 WL 282369 (N.D. Cal. Jan. 22, 2019) .......................................... 17

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................. 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ......................................... 5

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ........................................................................... 11

*In re Valeant Pharms. Int'l, Inc. Secs. Litig.*,
   2020 WL 3166456 (D.N.J. June 15, 2020) ............................................ 10

*In re Yahoo Mail Litig.*,
   2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ....................................... 18

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2019 WL 387322 (N.D. Cal. Jan. 30, 2019) ...................................... 13, 21

v

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 4212811 (N.D. Cal. July 22, 2020) ..................................................... 5

*Jabbari v. Farmer*,
    965 F.3d 1001 (9th Cir. 2020) ..................................................................... 10

*Jimenez v. Allstate Ins. Co.*,
    765 F.3d 1161 (9th Cir. 2014) ..................................................................... 10

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012) ................................................................. 11

*Kazi v. PNC Bank, N.A.*,
    2020 WL 607065 (N.D. Cal. Feb. 7, 2020) ........................................ 8, 9, 13

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) ......................................................................... 8

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) .................................................. 17, 18

*Krommenhock v. Post Foods, LLC*,
    2021 WL 2910205 (N.D. Cal. June 25, 2021) .............................................. 5

*Krommenhock v. Post Foods, LLC*,
    334 F.R.D. 552 (N.D. Cal. Mar. 9, 2020) ................................................... 10

*Kutzman v. Derrel's Mini Storage, Inc.*,
    2020 WL 406768 (E.D. Cal. Jan. 24, 2020) ............................................... 10

*Larsen v. Trader Joe's Co.*,
    2014 WL 3404531 (N.D. Cal. July 11, 2014) ........................................ 17, 18

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ..................................................................... 18

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ..................................................................... 10

*Martin v. Monsanto Co.*,
    2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) .............................................. 9

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ................................................................. 8, 19

*McMorrow v. Mondelez*,
    2020 WL 1157191 (S.D. Cal. Mar. 9, 2020) ............................................... 17

*Mezzadri v. Med. Depot, Inc.*,
  2016 WL 5107163 (S.D. Cal. May 12, 2016) ...................................................... 8

*Milan v. Clif Bar & Co.*,
  2021 WL 4427427 (N.D. Cal. Sept. 27, 2021) ........................................... 10, 13

*Miller v. Ghirardelli Chocolate Co.*,
  2014 WL 4978433 (N.D. Cal. Oct. 2, 2014) ....................................................... 5

*Moreno v. Beacon Roofing Supply, Inc.*,
  2020 WL 1139672 (S.D. Cal. Mar. 9, 2020) ..................................................... 11

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ........................................................................... 20

*Racies v. Quincy Bioscience, LLC*,
  No. 15-cv-292 (N.D. Cal.) ................................................................................. 16

*Rasario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ............................................................................. 8

*Rodriguez v. Bumble Bee Foods, LLC*,
  2018 WL 1920256 (S.D. Cal. Apr. 24, 2018) ................................................... 19

*Rodriguez v. W. Pub'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................. 14, 17, 18

*Schneider v. Chipotle Mexican Grill, Inc.*,
  2020 WL 511953 (N.D. Cal. Jan. 31, 2020) ...................................................... 12

*Senne v. Kansas City Royals Baseball Corp.*,
  2021 WL 3129460 (N.D. Cal. July 23, 2021) ...................................................... 7

*Sherman v. CLP Res., Inc.*,
  2020 WL 2790098 (C.D. Cal. Jan. 30, 2020) ............................................... 11, 14

*Shin v. Plantronics, Inc.*,
  2020 WL 1934893 (N.D. Cal. Jan. 31, 2020) .................................................... 12

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ....................................................................... 14, 21

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012) ...................................................................... 13

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ........................................................................... 10

vii

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ................................................................................................ 20

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ........................................................................................................... 10

*Vasquez v. Coast Valley Roofing, Inc.*,
  670 F. Supp. 2d 1114 (E.D. Cal. 2009)............................................................................... 15

*Villalpando v. Exel Direct Inc.*,
  303 F.R.D. 588 (N.D. Cal. 2014) .......................................................................................... 8

*Vincent v. Reser*,
  2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ....................................................................... 20

*Vinole v. Countrywide Home Loans*,
  571 F.3d 935 (9th Cir. 2009) .............................................................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .............................................................................................................. 8

*Walsh v. CorePower Yoga LLC*,
  2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ....................................................................... 13

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
  2016 WL 8578913 (C.D. Cal. Dec. 2, 2016) ....................................................................... 19

*Wolf v. Permanente Med. Group, Inc.*,
  2018 WL 5619801 (N.D. Cal. Sept. 14, 2018) .................................................................... 20

*Wren v. RGIS Inventory Specialists*,
  2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................................................. 20, 21

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ....................................................................................... 11, 13

**Statutes**

28 U.S.C. § 1715(b) ..................................................................................................................... 7


**Other Authorities**

Manual for Complex Litigation (Second) § 30.44 ...................................................................... 19

Northern District of California's Procedural Guidelines for Class Action Settlements ................... 1, 8, 9, 27

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................. 10

Fed. R. Civ. P. 23(b)(3)(A)-(D) ............................................................................................ 15

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................... 24

Fed. R. Civ. P. 23(e) ............................................................................................................... 1

Fed. R. Civ. P. 23(e), advisory committee note (2003 amendment) ...................................... 16

Fed. R. Civ. P. 23(h) ............................................................................................................. 23

**NOTICE OF MOTION**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 23(e) and the Northern District of California's Procedural Guidelines for Class Action Settlements ("Settlement Guidelines"), on November 12, 2021, at 9:30 a.m., or as soon thereafter as may be heard, Plaintiff will move the Court, the Honorable Joseph C. Spero presiding, for an Order preliminarily approving a proposed nationwide class action settlement. The Motion is based on this Notice of Motion; the below Memorandum; the concurrently-filed Declarations of Jack Fitzgerald ("Fitzgerald Decl.") and Brandon Schwartz ("Schwartz Decl."), and all exhibits thereto; all prior pleadings and proceedings had in the action; and any additional evidence or argument submitted in support of the Motion.

Plaintiff seeks an Order certifying the Settlement Class, appointing him Class Representative, and appointing his attorneys Class Counsel; granting preliminary approval to the proposed nationwide class Settlement; approving the proposed Notice Plan and directing Class Notice to be made; and setting schedules and procedures for effecting Class Notice, making claims, opting out, objecting, and conducting a Final Approval Hearing.

**ISSUES TO BE DECIDED**

Whether the Court should certify the Settlement Class, grant the proposed Settlement preliminary approval, and set a schedule and procedures for Class Notice, claims, opting out, objecting, and holding a Final Approval Hearing.

**MEMORANDUM OF POINTS & AUTHORITIES**

## I.    INTRODUCTION

In this putative class action, Plaintiff Curtis Hanson "asserts consumer protection and breach of warranty claims under California law based on his allegations that Defendant Welch Foods Inc. ('Welch's') falsely represented that certain grape juice products support heart health when they in fact increase the risk of heart disease." *Hanson v. Welch Foods Inc.*, 470 F. Supp. 3d 1066, 1067-68 (N.D. Cal. 2020). Welch denies the allegations. The parties have now settled the action on a nationwide class basis, subject to the Court's approval, with Welch agreeing to establish a $1.5 million non-reversionary common fund for all settlement costs, and to refrain for at least two years from using the challenged "helps support a healthy

1

heart," "helps promote a healthy heart," or any substantially identical claim on the challenged Welch products: (i) 100% Grape Juice Concord Grape, (ii) 100% Juice Red Sangria, and (iii) 100% Black Cherry Concord Grape Juice. *See* Fitzgerald Decl. Ex. 1, Class Action Settlement Agreement ("SA") ¶¶ 1.7, 4.1, 6.1. Class Member claimants will be entitled to claim $1 per product purchased, for up to 12 products without proof of purchase (and no cap with proof of purchase), subject to a *pro rata* increase or decrease if the amount claimed is less than or exceeds the remainder of the Settlement Fund after other expenses. *Id.* ¶¶ 5.10 - 5.12. Given these meaningful remedies for the Settlement Class, the Court should find that the proposed Settlement falls within the range of reasonableness and grant preliminary approval.

## II.   PROCEDURAL HISTORY & SETTLEMENT NEGOTIATIONS

Plaintiff Curtis Hanson filed this consumer class action on March 23, 2020, alleging Welch violated California's consumer protection and warranty statutes. *See* Dkt. No. 1, Compl. ¶¶ 58-86. He alleged the claim that certain Welch grape juices "help promote" or "help support a healthy heart" were "false and misleading" because "at levels typically consumed, 100% fruit juices . . . increase the risk of cardiovascular disease" and "type 2 diabetes" and "is associated with increased all-cause mortality." *Id.* ¶¶ 1-2.

In May 2020, Welch moved to dismiss. Dkt. No. 8, "Welch MTD." The Court permitted Plaintiff's warranty claims to proceed but dismissed his consumer fraud claims with leave to amend, to plead more specifically on which labeling claims he relied. *See Hanson*, 470 F. Supp. 3d at 1073-76. On July 13, 2020, Plaintiff filed his First Amended Complaint (Dkt. No. 23, "FAC"). Welch's Answer largely denied the allegations and asserted 29 affirmative defenses. *See* Dkt. No. 24.

Believing Welch's defenses were improper or inadequately pleaded, Plaintiff prepared a motion to strike. Fitzgerald Decl. ¶ 3. "In the hopes of avoiding burdening the Court," however, Plaintiff provided the draft motion to Welch, requesting that it "review the draft motion and consider voluntarily amending Welch's Answer to remove any negative defenses . . . and any defense for which Welch currently lacks a legal or factual basis for asserting." *Id.* Welch agreed, and on August 13, 2020 filed an Amended Answer that asserted just 16 affirmative defenses. *See* Dkt. No. 25.

In July 2020, Plaintiff also served on Welch document requests, interrogatories, and requests for admission. Fitzgerald Decl. ¶ 5. Welch responded and produced documents including: (i) product labels and spreadsheets identifying each label's approximate start and end dates, the claims on each label, and any

changes thereto; (ii) a spreadsheet identifying scientific studies Welch claimed substantiates its "healthy heart" claims, including Welch's involvement in each study, if any; (iii) communications from consumers and other attorneys concerning the labeling of the Class Products; (iv) price lists; and (v) information about potential insurance coverage. *Id.* ¶ 6.

Also in July 2020, Plaintiff served a subpoena on Information Resources, Inc. (IRI), a company that collects and aggregates "scan" data for various consumer products, seeking sales figures for the Class Products. *See id.* ¶ 7. Plaintiff retained economist Colin B. Weir to process the IRI data and provide a Rule 408 declaration,[1] which showed nationwide sales totaling approximately $160 million and estimated nationwide damages of about $7.3 million. *Id.* ¶ 8 To estimate damages, Mr. Weir applied a price premium of 4.59%, which was the premium found attributable to "Heart Health" claims in a similar lawsuit, challenging Kellogg's use of such claims on Raisin Bran cereal. *See id.*; *Hadley v. Kellogg Sales Co.*, 2019 WL 3804661, at *24 (N.D. Cal. Aug. 13, 2019) ("Mr. Weir offers a hedonic regression showing a 4.59% price premium for the 'Heart Healthy' statement.").

Plaintiff provided Mr. Weir's declaration to Welch on September 22, 2020. *Id.* ¶ 9. At the time, the parties were meeting and conferring regarding Welch's discovery responses. *See generally* Dkt. No. 30, Joint Case Mgmt. Statement at 1-2 (detailing discovery issues). When, a few months later, Welch had not responded, on December 16, 2020, Plaintiff sent a letter making a definite offer of settlement. Fitzgerald Decl. ¶ 9. In April 2021, Welch's in-house counsel advised Plaintiff's counsel that Welch was retaining new counsel. *Id.* On May 6, 2021, Welch's current counsel substituted in. Dkt. No. 32. On June 8, 2021, Welch countered Plaintiff's December 2020 demand. Fitzgerald Decl. ¶ 10. The parties continued to negotiate monetary and injunctive relief, ultimately reaching on August 4, 2021 an agreement on material terms, which is embodied in the Settlement Agreement now presented to the Court. *Id.*

## III.    THE SETTLEMENT

### A.    The Settlement Class

The Settlement Class is comprised of all persons who, between March 23, 2016 and October 1, 2021 (the "Class Period"), purchased in the United States, for household use and not for resale or distribution, one

---

[1] Welch did not provide Plaintiff with sales figures, *compare* Dkt. No. 22, but Plaintiff had intended to subpoena IRI regardless, since its data is often better. *See id.*

3

of the Class Products (Welch's 100% Grape Juice Concord Grape, 100% Juice Red Sangria, and 100% Black Cherry Concord Grape Juice). SA ¶¶ 1.4, 1.7.

### B.  Benefits for the Settlement Class

#### 1.  Welch will Establish a $1.5 Million Non-Reversionary Settlement Fund

As consideration for the Class's release, Welch will establish a $1.5 million non-reversionary common fund (the "Settlement Fund") to pay Class Member claims, Class Notice and Other Administrative Costs; and attorneys' fees, expenses, and a service award. *See id.* ¶ 4.1; *see also id.* ¶¶ 1.17, 1.23, 1.38.

##### a.  Class Member Claims

Class Members who make valid, timely claims will be entitled to a Settlement Payment of $1 for each Class Product purchased during the Class Period, for up to 12 products without proof of purchase (with no cap where a Class Member has proof of purchase for more than 12 products). *Id.* ¶¶ 5.10 - 5.11. If the total value of all Approved Claims is less than or exceeds the funds available for distribution to Class Members after other settlement expenses are deducted from the Settlement Fund, Class Members' payments will be increased or decreased *pro rata* prior to distribution. *Id.* ¶ 5.12.

##### b.  Notice and Other Administrative Costs

The Common Fund will be used to pay the actual costs of class notice and other administrative costs. SA ¶¶ 1.23, 4.1. After soliciting bids from several administrators, the parties have agreed, with the Court's approval, to retain Postlethwaite & Netterville, APAC ("P&N") as the Class Administrator. Fitzgerald Decl. ¶ 17. P&N estimates the cost of Notice and Other Administrative Costs will be $249,441, based on an estimated 2.5% claims rate (or 80,000 claims compared to the estimated Class of 3.2 million households), and has agreed to cap these expenses at certain claims rates. *Id.* ¶ 21. P&N's proposed Notice Plan is detailed below and in the concurrently-filed Schwartz Declaration.

##### c.  Attorney's Fees, Costs, and Class Representative Service Award

At least 35 days before the Objection Deadline, Plaintiff and his counsel will request that the Court award attorneys' fees and costs, and a service award, from the Settlement Fund, subject to a "quick pay" provision. *See* SA ¶¶ 7.1 - 7.3.[2] The "Settlement is not dependent or conditioned upon the Court's approving . . . the particular amounts sought by Class Counsel and the Class Representative." *Id.* ¶ 7.5.

---

[2] Quick pay provisions help deter meritless objections and are routinely approved in this District. *See In re*

4

### 2.    Injunctive Relief

In addition to compensating the Class, as consideration for the Class's release, Welch has agreed to refrain from using on the labels of the Class Products, for at least two years, the claims "helps support a heathy heart," "helps promote a healthy heart," and any substantially identical claim. SA ¶ 6.1. The two-year "Refrain From Use Period" arises, at the latest, one year after entry of judgment, *id.* ¶ 6.2, unless Welch Class Counsel with representations concerning supply chain issues, in which case Welch shall receive an additional six months to begin the Refrain From Use Period, *id.* ¶ 6.3.

### 3.    Class Notice and Claims Administration

Subject to the Court's approval, the parties have retained P&N as the Class Administrator to effect Class Notice and Claims Administration. *See* Fitzgerald Decl. ¶¶ 17-20 (detailing process of selecting Class Administrator). P&N has been administering class action notice and claims since 1999 and has extensive experience in state and federal courts. Schwartz Decl. ¶¶ 3-5 & Exs. A-B. P&N is also the Class Administrator for the similar settlements reached in *Hadley* and *Krommenhock*. *See* Fitzgerald Decl. ¶ 20.

The Settlement provides that Class Notice will be effectuated through a Notice Plan designed by the Class Administrator to comply with the requirements of Rule 23 and approved by the Parties and Court. SA ¶ 9.1. P&N has offered a Notice Plan that meets these requirements. *See* Schwartz Decl. ¶¶ 15-32; *see also infra* Point V(C). On behalf of Welch, P&N will also serve CAFA notice upon the appropriate officials within 10 days after the filing of this motion, as required by 28 U.S.C. § 1715(b). *See* SA ¶ 9.4.

### C.    The Release

Upon the Effective Date, each Class Member who has not opted out will be deemed to have released Welch and related entities from any claims:

---

*Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *40 (N.D. Cal. July 22, 2020) ("[Q]uick-pay provisions have long been accepted in the appropriate circumstances." (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) ("With respect [to] the 'quick pay' provisions, Federal courts, including this Court and others in this District, routinely approve settlements that provide for payment of attorneys' fees prior to final disposition in complex class actions." (collecting cases)))); *Miller v. Ghirardelli Chocolate Co.*, 2014 WL 4978433, at *5 (N.D. Cal. Oct. 2, 2014) ("'quick pay' provisions are routinely approved by courts in this district" (citation omitted)); *compare Krommenhock v. Post Foods, LLC*, 2021 WL 2910205, at *2 (N.D. Cal. June 25, 2021) (approving quick pay of attorney's fees and costs).

that any Releasing Party has or may have against the Released Parties that (i) relate to the Class Products (except for any claim for personal injury), (ii) arise out of or relate to the facts alleged or the claims asserted in the Action, (iii) are based on the identical factual predicate as that underlying the claims in the Action, or (iv) depend on the same set of facts alleged in the Action, which have been or which could have been asserted in the Action, and that have been brought, could have been brought, or are currently pending in any forum in the United States.

*See id.* ¶¶ 1.34, 13.1. "The scope of the Released Claims shall be the broadest permitted by law, but is not intended to go beyond that scope." *Id.* ¶ 1.34; *compare Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010).

### D.    Opting Out

Class Members who wish to be excluded from the Settlement must submit a Request for Exclusion (or "Opt-Out Form") to the Class Administrator, postmarked no later than the Opt-Out Deadline; "mass" or "class" opt-outs are not permitted. *Id.* ¶¶ 1.37, 11.1. All Class Members who submit a timely, valid Request for Exclusion will not be bound by the terms of the Agreement, whereas all Class Members who do not validly request exclusion will be bound by the Agreement and any Judgment. *Id.* ¶ 11.2 - 11.3.

### E.    Objecting

Settlement Class Members wishing to object must, by the Objection Deadline, file his or her written objection with the Court. *Id.* ¶ 10.1; *see also* Settlement Guidelines, Preliminary Approval ¶ 5 ("The notice should instruct class members who wish to object to the settlement to send their written objections only to the court.") An objection must contain:

(a) a caption or title that clearly identifies the Action and that the document is an objection; (b) the objector's name, address, telephone number, email or, if represented by counsel, the name, address, telephone number and email of his or her counsel; (c) information sufficient to establish the objector's standing as a Class Member; (d) a statement indicating whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel; (e) a statement of the objection and the grounds supporting the objection, including any facts and/or law supporting the objection; (f) copies of any papers, briefs, or other documents upon which the objection is based; (g) the name and case number for all actions in which the objector has objected to a class action settlement in the past five (5) years; (h) the objector's signature, and (i) if the objector is represented by counsel, the signature of objector's counsel.

SA ¶ 10.2; *see also id.* ¶ 10.3 (valid objectors may appear at Final Approval Hearing). Class Members who both object and opt out will be deemed to have opted out, and thus be ineligible to object. *Id.* ¶ 11.4. The parties have the right, but not the obligation to respond to any objections. *See id.* ¶ 10.5.

## IV.    TIMELINE

Assuming the Court grants preliminary approval, the following proposed schedule gives absent Class Members sufficient time to receive Notice of the Settlement, and to make a claim, opt out, and object after reviewing Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards. *See In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010); Settlement Guidelines, Preliminary Approval ¶ 9 ("The parties should ensure that class members have at least thirty-five days to opt out or object to the settlement and the motion for attorney's fees and costs.").

| Event | Day | Approx. Weeks After Preliminary Approval | Example Assuming PA Granted November 12, 2021 |
|---|---|---|---|
| Date Court grants preliminary approval | 0 | - | |
| Deadline to commence 63-day notice period | 21 | 3 weeks | December 3, 2021 |
| Deadline for Plaintiff to file Motion for Attorneys' Fees, Costs, and Service Awards | 49 | 7 weeks | December 31, 2021 |
| Notice completion date, and deadline to make a claim, opt out, and object | 84 | 12 weeks | February 4, 2022 |
| Deadline for Plaintiff to file Motion for Final Approval | 98 | 14 weeks | February 18, 2022 |
| Final Approval Hearing | 119 | 17 weeks | March 11, 2022 |

## V.    ARGUMENT

### A.    The Court Should Certify the Settlement Class

#### 1.    The Requirements of Rule 23(a) are Satisfied

"Rule 23(a) requires that a plaintiff seeking to assert claims on behalf of a class demonstrate: 1) numerosity; 2) commonality; 3) typicality; and 4) fair and adequate representation of the interests of the class. *Senne v. Kansas City Royals Baseball Corp.*, 2021 WL 3129460, at *13 (N.D. Cal. July 23, 2021) (Spero, J.) (citing Fed. R. Civ. P. 23(a)).

### a.    Numerosity

A class action satisfies the numerosity requirement if "the class is so large that joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Although the requirement is not tied to any fixed numerical threshold, courts have routinely found the numerosity requirement satisfied "when the class comprises 40 or more members." *E.E.O.C. v. Kovacevich "5" Farms*, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007); *see also Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605-606 (N.D. Cal. 2014) (Spero, J.) (numerosity satisfied where 373 individuals fit class definition). Here, the class size is estimated at 3.2 million, Schwartz Decl. ¶ 13, easily satisfying the numerosity requirement.

### b.    Commonality

"The commonality requirement of Rule 23(a)(2) is met where the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] with one stroke." *Kazi v. PNC Bank, N.A.*, 2020 WL 607065, at *4 (N.D. Cal. Feb. 7, 2020) (Spero, J.) (internal quotation marks omitted). "'[C]ommonality only requires a single significant question of law or fact.'" *Id.* (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)).

"[P]laintiff's burden for showing commonality is 'minimal,'" *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *3 (S.D. Cal. May 12, 2016) (quoting *Hanlon*, 150 F.3d at 1020). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement," *Rasario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), which exists "where a defendant has engaged in standardized conduct toward members of the class." *Hale v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 4992504, at *6 (S.D. Ill. Sept. 16, 2016) (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (collecting cases)). To satisfy Rule 23(a)(2), "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (alterations and quotes omitted).

Here, whether Welch's "helps promote" or "helps support a healthy heart" labeling was false or misleading, and whether purchasers paid more for the Class Products as a result, are "issue[s] common to the putative class" such that "Plaintiffs have satisfied this prong of Rule 23(a)." *Kazi*, 2020 WL 607065, at *5.

### c.    Typicality

"In assessing typicality, under Rule 23(a)(3), courts consider 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

whether other class members have been injured by the same course of conduct.'" *Id.*, at \*8 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The typicality and commonality requirements 'tend to merge' because '[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* (citation omitted). "This requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1118 (N.D. Cal. 2018) (internal quotation marks and citation omitted).

Here, Plaintiff's claims are typical of Class Members' claims because each purchased Class Products and were exposed to challenged labeling claims, allegedly losing money by overpaying for products containing material misrepresentations and omissions. *See Martin v. Monsanto Co.*, 2017 WL 1115167, \*4 (C.D. Cal. Mar. 24, 2017) ("claims are sufficiently typical of the class claims" where "Plaintiff alleges that she and all class members were exposed to the same statement . . . and that they were all injured in the same manner"). Accordingly, the Court should find that "Plaintiff has satisfied Rule 23(a)'s typicality . . . requirement" because he "'alleges he was injured when he paid more for the challenged products due to the price premium [Welch's] false and material health and wellness claims demanded in the market,'" which are "'the same injuries each [Settlement] Class Member alleges based on the same [Welch] conduct,'" *see Hadley*, 324 F. Supp. 3d at 1118, 1121 (N.D. Cal. 2018) (record quotation omitted).

### d. Adequacy

"Rule 23(a)(4), which requires that the class representatives 'fairly and adequately protect the interests of the class,' is satisfied if the proposed representative plaintiffs do not have conflicts of interest with the proposed class and are represented by qualified and competent counsel. *Kazi*, 2020 WL 607065, at \*8 (quoting *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 535 (N.D. Cal. 2012)).

Plaintiff is an adequate Class Representative because he is a *bona fide* purchaser with standing, has no conflicts, and has been aware of and carried out his obligations on behalf of the Class. Fitzgerald Decl. ¶ 25; *compare Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). And—as several courts in this district have recently found—Plaintiffs' counsel

9

are adequate Class Counsel, experienced in prosecuting similar actions. *See Milan v. Clif Bar & Co.*, 2021 WL 4427427, at *8 (N.D. Cal. Sept. 27, 2021); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 (N.D. Cal. Mar. 9, 2020); *Hadley*, 324 F. Supp. 3d at 1121.

### 2.      The Requirements of Rule 23(b)(3) are Satisfied

#### a.      Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Courts must "make a global determination of whether common questions prevail over individualized ones," meaning predominance "is not . . . a matter of nose-counting." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (citing *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014)). Instead, "more important questions apt to drive the resolution of the litigation are given more weight . . . over individualized questions which are of considerably less significance to the claims of the class." *Id.* "Therefore, even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) ["*Hyundai*"] (quoting *Tyson Foods*, 136 S. Ct. at 1045).

"[W]hether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *Id.* at 558; *see also Jabbari v. Farmer*, 965 F.3d 1001, 1005-1006 (9th Cir. 2020). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

"In evaluating predominance, courts look to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." *Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL 406768, at *7 (E.D. Cal. Jan. 24, 2020) (citation omitted); *accord In re Valeant Pharms. Int'l, Inc. Secs. Litig.*, 2020 WL 3166456, at *5 (D.N.J. June 15, 2020) ("[C]ommon issues predominate where [ ] 'the inquiry necessarily focuses on defendants' conduct'" (quoting *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002))). "Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3)." *Castro v.*

10

1   *Paragon Indus., Inc.*, 2020 WL 1984240, at *10 (E.D. Cal. Apr. 27, 2020) (citations omitted); *accord Moreno*

2   *v. Beacon Roofing Supply, Inc.*, 2020 WL 1139672, at *3 (S.D. Cal. Mar. 9, 2020) (predominance satisfied

3   where "liability would be determined by looking at Beacon's uniform policies and practices"); *In re Janney*

4   *Montgomery Scott LLC Fin. Consulting Litig.*, 2009 WL 2137224, at *5 (E.D. Pa. July 16, 2009)

5   (predominance "satisfied when plaintiffs have alleged a common course of conduct on the part of the

6   defendant." (citation omitted)).

7        "A finding of a 'common nucleus of facts and potential legal remedies' is sufficient to establish

8   predominance," *Cortes v. Nat'l Credit Adjusters, L.L.C.*, 2020 WL 3642373, at *5 (E.D. Cal. July 6, 2020)

9   (quoting *Hanlon*, 150 F.3d at 1022), which "is a test readily met in certain cases alleging consumer . . .

10  fraud," *Amchem*, 521 U.S. at 625, because "the crux of each consumer's claim is that a company's mass

11  marketing efforts, common to all consumers, misrepresented the company's product," so that a "cohesive

12  group of individuals suffered the same harm in the same way because of the [defendant's] alleged conduct."

13  *See Hyundai*, 926 F.3d at 559 (predominance satisfied where "class members were exposed to uniform fuel-

14  economy misrepresentations and suffered identical injuries within only a small range of damages").

15       Moreover, "a central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of

16  common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans*, 571 F.3d 935,

17  944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1189 (9th Cir. 2001)). "Judicial

18  economy weighs in favor of a class action where . . . liability turns on whether advertisements were false or

19  misleading." *Johns v. Bayer Corp.*, 280 F.R.D. 551, 559 (S.D. Cal. 2012). This is because such claims "focus

20  on the defendant's conduct, rather than the plaintiff's damages," *In re Tobacco II Cases*, 46 Cal. 4th 298,

21  312 (2009), and do "not require the court to investigate class members' individual interaction with the

22  product." *Bradach v. Pharmavite, LLC*, 735 Fed. Appx. 251, 255 (9th Cir. 2018) (quotation omitted); *accord*

23  *Sherman v. CLP Res., Inc.*, 2020 WL 2790098, at *6 (C.D. Cal. Jan. 30, 2020) ("[P]redominance is satisfied"

24  where "the case requires determination of whether Defendants' uniformly-applied policies were lawful under

25  California law," because "adjudication of these common issues 'will help achieve judicial economy,' further

26  the goal of efficiency, and 'diminish the need for individual inquiry'" (quoting *Vinole*, 571 F.3d at 939)). As

27

28

a result, courts regularly find predominance in settlements of consumer fraud class actions.[3]

Here, the operative Complaint alleges that "Welch has marketed the Welch Grape Juices as 'supporting' or 'promoting' a 'healthy heart,'" *see* FAC ¶¶ 14-15. It also alleges those claims are "false and misleading for at least three reasons," including that, "at levels typically consumed, 100% fruit juices, such as the Welch Grape Juices, increase the risk of cardiovascular disease," "increase the risk of type 2 diabetes," and are "associated with increased all-cause mortality." *Id*. ¶¶ 1-2, 37. Predominance is satisfied by these allegations.

While all Class Products included in the Settlement bore challenged "helps promote" or "helps support a healthy heart" claims, Fitzgerald Decl. ¶ 6 n.9, Plaintiff also asserted an omissions theory that applies to all Class Products, *see* FAC ¶ 38, and this separately presents predominating common questions. *See Butler v. Porsche Cars N. Am., Inc.*, 2017 WL 1398316, at *10 (N.D. Cal. Apr. 19, 2017) ("exposure and reliance suitable for class-wide resolution…where the class was defined as all purchasers" and plaintiff's "claims were based on information omitted from the product's packaging."). "In these cases, all class members were 'necessarily exposed' to the defendant's omissions on the package prior to purchase," *Id.* (citing *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1105 (C.D. Cal. 2015) (collecting cases))

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted). That is the case here. The Court should thus find that the Settlement Class satisfies the predominance requirement. *See Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, 2018 WL 8949777, at *5 (N.D. Cal. Oct. 15, 2018)

---

[3] *See, e.g.*, *Broomfield v. Craft Brew Alliance, Inc.*, 2020 WL 1972505, at *4 (N.D. Cal. Feb. 5, 2020) (predominance satisfied where "Plaintiffs allege that all Settlement Class Members were exposed to CBA's representations on the packaging of Kona Beers, which Plaintiffs allege are deceptive and material"); *Schneider v. Chipotle Mexican Grill, Inc.*, 2020 WL 511953, at *6 (N.D. Cal. Jan. 31, 2020) ("[F]or purposes of settlement, common questions predominate here, because the Settlement Class Members were exposed to uniform representations . . . and suffered the same injuries."); *Shin v. Plantronics, Inc.*, 2020 WL 1934893, at *2 (N.D. Cal. Jan. 31, 2020) ("whether . . . representations were misleading" involved "common questions [that] are central to this lawsuit and predominate over individual questions"); *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *2 (S.D. Cal. Jan. 31, 2020) ("common questions of law and fact" that "predominate over individual questions" included, *inter alia*, "whether Ocean Spray's representations . . . were false and misleading or reasonably likely to deceive consumers").

(Spero, J.) ("Predominance is satisfied because the overarching common question of whether [Defendant] is . . . liable . . . can be resolved using the same evidence for all class members and is exactly the kind of predominant common issue that makes certification appropriate." (citation omitted)).

### b.   Superiority

"A consideration of the[] factors [set forth in Rule 23(b)(3)(A)-(D)] requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (quotation omitted). The "superiority requirement is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal. 2012) (citation omitted); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). That is the case here, where the juices at issue cost $3.75, and damages are just $0.13 per unit on average, *see* Fitzgerald Decl. ¶ 23. *See Milan*, 2021 WL 4427427, at *7 ("There can be no doubt here that a class is the superior method of handling these consumer claims. The bars at issue here cost no more than a few dollars per bar . . . and it is not likely for class members to recover large amounts individually if they prevailed."); *cf. Kazi*, 2020 WL 607065, at *6 ("For much the same reasons [that support finding predominance], the Court also concludes that class treatment is superior to individual actions to resolve these claims.").

### B.   The Court Should Approve the Proposed Settlement

> Preliminary approval of a settlement and notice to the class is appropriate if "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval."

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2019 WL 387322, at *4 (N.D. Cal. Jan. 30, 2019) ["*Yahoo!*"] (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation (Second) § 30.44)). "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class." *Walsh v. CorePower Yoga LLC*, 2017 WL 589199, at *6 (N.D. Cal. Feb. 14, 2017) (citing *Hanlon*, 150 F.3d at 1027).

### 1.   The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations

The Settlement was reached more than a year into the litigation, after the Court considered Welch's motion to dismiss and the parties exchanged sufficient discovery and other information to understand the

value and risk of the case. Nothing about the Settlement indicates collusion, with the typical "subtle signs" absent, since nothing in the Agreement purports to entitle counsel to "a disproportionate distribution of the settlement" (and Class Members *are* to "receive[] [a] monetary distribution"); nothing returns unawarded fees to Welch; and the Settlement Agreement includes no "clear sailing" agreement, instead providing only that counsel will apply to the Court for fees, imposing no conditions on Welch's response, and making the fee determination independent of the Settlement's other provisions. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

"[T]he prospect of fraud or collusion is substantially lessened where, as here, the settlement agreement leaves the determination and allocation of attorney fees to the sole discretion of the trial court." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d 456, 486 (E.D. La. 2020). Here, "[b]ecause the parties have not agreed to an amount of attorney fees and instead [will] merely petition[] the Court for an award they believe is appropriate, there is no threat of the issue tainting the fairness of the settlement negotiations." *See id.*; *Sherman*, 2020 WL 2790098, at *9 ("Attorneys' fees will be paid by . . . the Gross Settlement Amount, so the case does not present a 'clear sailing' arrangement.").[4]

Moreover, the excellent nature of the Settlement, *see* Fitzgerald Decl. ¶¶ 12-13, demonstrates it was achieved through vigorous litigation, rather than collusion, since "cash . . . is a good indicator of a beneficial settlement," *Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), and a sign that Class Counsel did not subvert the Class's interests to Welch's "in exchange for red-carpet treatment on fees," *see Bluetooth*, 654 F.3d at 947 (quotation omitted).

## 2. The Settlement Does Not Grant Preferential Treatment Improperly

The Settlement does not treat Plaintiff or any Class Members preferentially, since every Class Member who makes a claim, including Plaintiff, will be subject to the same claims process that provides the same remedy based on the claimant's purchase history. That Plaintiff, as Class Representative, will move for a service award does not change this analysis. *See Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9

---

[4] Similarly, no other agreements have been made in connection with the proposal, Fitzgerald Decl. ¶ 2, so there is no possibility such an agreement "may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e), advisory committee note (2003 amendment).

1  (N.D. Cal. Apr. 29, 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez*, 563

2  F.3d at 958-69).

3          **3.**      **The Settlement Falls within the Range of Possible Approval**

4          "To evaluate the range of possible approval criterion, which focuses on substantive fairness and

5  adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement

6  offer." *Id*. (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009)

7  (citation omitted)).

8                  Additionally, to determine whether a settlement is fundamentally fair, adequate, and

9                  reasonable, the Court may preview the factors that ultimately inform final approval: (1) the

10                 strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

                litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

11                 offered in settlement; (5) the extent of discovery completed and the stage of the proceedings;

                (6) the experience and views of counsel; (7) the presence of a governmental participant; and

12                 (8) the reaction of class members to the proposed settlement.

13 *Id*. (citing *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted)).

14         **a.**      **The *Churchill Village* Factors Favor Preliminary Approval**

15         An initial analysis of the *Churchill Village* factors favors preliminary approval.

16         ***The Strength of Plaintiff's Case*** and ***the Risk, Expense, Complexity, and Duration of Further***

17 ***Litigation.*** Plaintiff and his counsel believe this case was strong on the merits, and the Settlement reflects

18 that. But the case was by no means perfect or without risk. *See generally* Fitzgerald Decl. ¶¶ 14-15.

19         First, Welch had some viable defenses. Under the Federal Food, Drug, and Cosmetic Act, the sugar

20 in 100% fruit juice, like the Class Products, is considered intrinsic, not added. Since the FDA has promulgated

21 a daily recommended limit for *added* sugar, but not intrinsic sugar, Plaintiffs would have had to explain to a

22 jury why it should ignore the distinction the FDA has drawn. *Compare* Welch MTD at 1-3 (Arguing that

23 "each of the Products is recognized as a healthful beverage by federal dietary guidance," that "the [Dietary]

24 Guidelines [for Americans] state that 100% juice, along with water and fat-free or low-fat milk, should be

25 'the primary beverages consumed' as part of a healthy diet," and that by "lump[ing] Welch 100% Juice

26 products that contain no added sugar together with all varieties of sugar-sweetened beverages," Plaintiff

27 "ignor[ed] a clear distinction that is drawn throughout the federal government's nutritional guidance").

28 Similarly, as Welch has pointed out, "each of the Products are specifically authorized by [FDA] regulations

to make the . . . claim: 'While many factors affect heart disease, diets low in saturated fat and cholesterol may reduce the risk of this disease.'" *Id.* at 2. This regulation could make it challenging for Plaintiff to prove to a jury that Welch's "helps promote" or "helps support a healthy heart" claims are misleading.

Welch also had scientific evidence to support the challenged labeling claims, which Plaintiffs would have had to overcome to establish liability. Welch identified over 30 scientific papers it contends support the challenged labeling claims by showing that the polyphenols in concord grape juice have heart-protective effects. Fitzgerald Decl. ¶ 14; *compare* Welch MTD at 2 ("This claim is . . . backed up by more than twenty years of scientific research on 100% juice from Concord grapes in particular . . . ."). It also argued that the scientific evidence cited in the Complaint was unavailing or supported Welch. *See* Welch MTD at 4-6. Liability would have thus been largely a battle of scientific experts. And although Plaintiff's counsel has some experience prosecuting similar claims against cereals and bars, this would have been the first case pitting scientific evidence concerning free sugars in fruit juice against scientific evidence concerning polyphenols in concord grape juice. Fitzgerald Decl. ¶ 14.

This means, of course, there was a risk the Class could lose at trial and recover nothing—as has happened in several seemingly meritorious consumer fraud class actions that have recently gone to trial in California, with judgments returned for defendants. *See Farar v. Bayer AG*, No. 14-cv-4601 (N.D. Cal.); *Allen v. Hyland's, Inc.*, No. 12-cv-1150 DMG (MANx) (C.D. Cal.); *cf. Racies v. Quincy Bioscience, LLC*, No. 15-cv-292 (N.D. Cal.) (declaring mistrial and decertifying class). Even if Plaintiff was successful at trial, numerous appeal issues remained, presenting both inherent risk and substantial delay. That is especially true since some cases proceeding on similar theories have not fared well. *See* Fitzgerald Decl. ¶ 15.

Second, Plaintiff would have had to expend significant resources establishing what would likely be moderate damages he could pursue at trial. Plaintiff's expert, Colin Weir, estimated nationwide damages of $7.3 million using a 4.59% premium derived from a hedonic regression he performed in *Hadley*. If the premium was similar here and damages are proportional to population—and extrapolating sales through the end of the Settlement's Class Period—the highest amount of damages Plaintiff could obtain for the California class he sought to represent is $1.1 million. *See* Fitzgerald Decl. ¶ 12. Mr. Weir could only do a hedonic regression in *Hadley* because several cereals in the market—not just Raisin Bran—made "heart health" claims. Here, that would not likely be possible, so that Plaintiff would likely have to commission a conjoint

16

1    analysis instead. *See id.* ¶ 12 n.11. In *Hadley*, another expert performed a conjoint analysis on "heart health"

2    claims, finding a 2.6% premium. *Id.* ¶ 12. Here that would reduce trial damages to less than $630,000. *See*

3    *id.* Yet, in *Hadley*, plaintiffs spent several hundred thousand dollars on these damages models. *See id.*

4         These factors thus weigh in favor of preliminary approval. *See Knapp v. Art.com, Inc.*, 283 F. Supp.

5    3d 823, 832 (N.D. Cal. 2017) (Approving settlement where "[c]ase law suggests that plaintiff would have

6    faced challenges in continuing to litigate" and "'[i]n most situations, unless the settlement is clearly

7    inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain

8    results.'" (quotation omitted)); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11,

9    2014) (factor favored approval where "plaintiffs have established that there are significant risks in entering

10   a protracted litigation," such as an "anticipated appeal" because "[a]voiding such unnecessary and

11   unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial

12   resources" (citations omitted)).

13        ***The Risk of Maintaining Class Action Status Through Trial.*** There are several barriers to class

14   certification in any case, and certification here was not guaranteed. *See McMorrow v. Mondelez*, 2020 WL

15   1157191 (S.D. Cal. Mar. 9, 2020) (in action alleging health and wellness claims on high-sugar bars were

16   misleading, denying class certification without prejudice because damages model did not match liability

17   theory); *In re Seagate Tech. LLC Litig.*, 2019 WL 282369, at *7-10 (N.D. Cal. Jan. 22, 2019) (Spero, J.)

18   (denying renewed motion for class certification and additionally discussing reasons for denying initial class

19   certification motion). Even if Plaintiff eventually obtained class certification, a "district court may decertify

20   a class at any time." *Rodriguez*, 563 F.3d at 966. This factor thus favors approval of the Settlement.

21        ***The Settlement Amount.*** The Settlement amount is excellent compared to other settlements in similar

22   cases challenging health and wellness claims on high-sugar foods. *See* Fitzgerald Decl. ¶ 13. As discussed

23   below, the amount is also reasonable in relation to the Settlement Class's potential recovery. *See infra* Point

24   V(B)(3)(b).

25        ***The Extent of Discovery Completed and Procedural Posture.*** Investigation and discovery have been

26   sufficient to permit the parties and Court to make an informed analysis, especially given Plaintiff's counsel's

27   earlier prosecution of cases based on the same theory and much the same evidence, like *Hadley*,

28   *Krommenhock*, *McMorrow*, and *Milan*. That discovery was not complete is of no moment: "as long as the

parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (a combination of investigation, discovery, and research conducted prior to settlement can provide sufficient information for class counsel to make an informed decision about settlement).

 ***The Experience and Views of Counsel.*** "The Ninth Circuit recognizes that 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Knapp*, 283 F. Supp. 3d at 833 (quoting *Rodriguez*, 563 F.3d at 967). Accordingly, in determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen*, 2014 WL 3404531, at *5.

 Plaintiff's counsel has considerable experience prosecuting consumer class actions, particularly those involving the false advertising of foods. Counsel has also been, since 2016, prosecuting a similar series of cases, and thus has been exposed to a wide variety of information about the claims and defenses, so that counsel has an especially good appreciation of the value and risks of the case in light of the parties' disputes of fact and law. Fitzgerald Decl. ¶ 4. Counsel strongly endorses the Settlement. *Id.* ¶ 16. Accordingly, this factor favors preliminary approval. *See Larsen*, 2014 WL 3404531, at *5 (factor favored settlement where "Plaintiffs' counsel ha[d] successfully represented consumers both as litigation class and settlement class counsel numerous times, including cases involving food mislabeling," and "believe[d] approval [wa]s in the best interests of the putative settlement class").

 ***Governmental Participation.*** There is no governmental participant, so this factor is inapplicable. *See*, *e.g.*, *In re Yahoo Mail Litig.*, 2016 WL 4474612, at *7 (N.D. Cal. Aug. 25, 2016).

 ***Class Member Reaction.*** Because the class has not yet been notified of the Settlement, "[t]he Court must wait until the final approval hearing to assess class members' reactions to the settlement." *See Gaudin v. Saxon Mortg. Servs., Inc.*, 2015 WL 4463650, at *6 (N.D. Cal. July 21, 2015).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.       The Monetary Relief is Fair in Relation to Potential Damages

Here, Plaintiff and his counsel secured for the Settlement Class direct monetary benefits of $1.5 million, which is reasonable in relation to both potential trial damages, and the nationwide Settlement Class's hypothetical potential damages. First, the $1.5 million common fund represents between 134.9% and 238.1% of the California class's estimated damages of between $629,927 and $1,112,063. *See* Fitzgerald Decl. ¶ 12. Second, the common fund represents a recovery of between 16.2% and 28.6% of the estimated $5.2 million to $9.3 million in nationwide damages. *See id.* This confirms the "reasonableness of the Settlement," since "[d]istrict courts have approved settlements as being in good faith for payment of 3% of an alleged tortfeasor's potential liability." *Heim v. Heim*, 2014 WL 1340063, at *5, *6 (N.D. Cal. Apr. 2, 2014) (citing *Chevron Envt'l. Mgmt. Co. v. BKK Corp.*, 2013 WL 5587363, at *3 n.2 (E.D. Cal. Oct. 10, 2013) (approving settlement representing less than 3% of total clean-up costs)); *cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 ("'It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" (quotation omitted)).

In reality, however, even complete success at trial would leave Settlement Class Members outside of California uncompensated. For even the possibility of obtaining the nationwide relief conferred by the Settlement, Plaintiff's counsel or other attorneys would have to file and prosecute actions in all other states since, given the existing legal precedents, it is virtually impossible that the claims of the nationwide Settlement Class could ever be adjudicated in a single forum and trial. *See*, *e.g.*, *Warner v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 8578913, at *12 (C.D. Cal. Dec. 2, 2016) ("Nationwide class certification under the laws of multiple states can be very difficult for plaintiffs' counsel." (citing *Mazza*, 666 F.3d at 590-94; *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 94 (D. Mass. 2008) (noting that "[w]hile numerous courts have talked-the-talk that grouping of multiple state laws is lawful and possible, very few courts have walked the grouping walk"))); *Rodriguez v. Bumble Bee Foods, LLC*, 2018 WL 1920256, at *3 (S.D. Cal. Apr. 24, 2018) (That "[t]he parties acknowledge[d] that obtaining a nationwide class may be difficult in light of recent case law . . . . weigh[ed] in favor of settlement."). Such litigation would cost the respective state classes millions of dollars to prosecute, be inherently risky, and continue for years, not including any appeals. *See* Fitzgerald Decl. ¶ 12.

### c.     The Settlement's Injunctive Relief is Appropriate and Meaningful

Plaintiff and Counsel also obtained substantial injunctive relief, which appropriately addresses Plaintiff's chief allegation, that Welch misleadingly labels its products as "help[ing]" to "promote" or "support" a "healthy heart." *See* SA ¶ 6.1 "[T]here is a high value to the injunctive relief obtained" in consumer class actions resulting in labeling changes. *See Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013). This benefits not just Class Members, but also "the marketplace, and competitors who do not mislabel their products." *Id.*

### d.     The Court will be Empowered to Determine Reasonable Fees, Costs, and Service Awards

Though "[t]he court will not approve a request for attorneys' fees until the final approval hearing, [ ] class counsel should include information about the fees they intend to request and their lodestar calculation in the motion for preliminary approval." Settlement Guidelines, Preliminary Approval ¶ 6. Here, Plaintiff's counsel anticipates petitioning the Court for a fee award of 25% of the common fund, or $375,000.[5] *See Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *27 (N.D. Cal. Apr. 1, 2011) (Spero, J.) ("[W]here the district court analyzes a fee request using the percentage of fund method, the Ninth Circuit has established 25% of the common fund as a 'benchmark' for attorneys' fee." (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)). In support of the fee application, Plaintiff's counsel will argue and evidence, *inter alia*, that the following factors support the request: the excellent benefits obtained for the class; the quality of representation; the complexity and novelty of the issues presented; and the contingent nature of the representation and risk of nonpayment.

In addition, "[a]ttorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19,

---

[5] Plaintiff's counsel has presently expended approximately 300 hours on the litigation, including investigating the claims and drafting the Complaint and First Amended Complaint, engaging in motion practice, participating in discovery, managing the case, and negotiating and documenting the Settlement, for a total lodestar of more than $177,000, which will likely increase to around $200,000 by the end of the litigation. Fitzgerald Decl. ¶ 34. This would mean Plaintiff's fee request represents a multiplier of between 1.88 and 2.11 to Plaintiff's counsel's lodestar. *Compare Wolf v. Permanente Med. Group, Inc.*, 2018 WL 5619801, at *2-3 (N.D. Cal. Sept. 14, 2018) (a fee that "results in a multiplier [of] 2.75-3.0 . . . falls within the range of fee multipliers courts routinely approve").

2013) (citations omitted); *see also* Fed. R. Civ. P. 23(h). Here, Plaintiff's counsel anticipates seeking reimbursement of expenses of $24,196. *See* Fitzgerald Decl. ¶ 35.

Finally, Plaintiff will petition the Court for a service award of $5,000 for Class Representative Curtis Hanson, evidencing his time into the matter and contribution to the Settlement. *Compare id.* ¶ 25. "It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Wren*, 2011 WL 1230826 at *31 (citing *Staton*, 327 F.3d at 977). And "there is ample case law finding $5,000 to be a reasonable amount for an incentive payment." *Id.*, at *36 (collecting cases).

### 4.     The Settlement has No Obvious Deficiencies

Plaintiff and his counsel submit that, given the foregoing, there are no obvious deficiencies in the Settlement. *See Dickey v. Advanced Micro Devices, Inc.*, 2019 WL 4918366, at *5 (N.D. Cal. Oct. 4, 2019); *contra. Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 967 (N.D. Cal. 2019) (finding "a number of obvious deficiencies that prevent the Court from granting preliminary approval at this time").

### C.     The Court Should Approve the Class Notice and Notice Plan

"Due process requires adequate notice before the claims of absent class members are released." *Yahoo!*, 2019 WL 387322, at *5 (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015)). "Rule 23 requires only the 'best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128-29 (9th Cir. 2017) (emphasis omitted) (quoting Fed. R. Civ. P. 23(c)(2)(B)). P&N's proposed Notice Plan is reasonable under the circumstances, as it is designed to reach a minimum of 70% of Class Members, at least twice each. *See* Schwartz Decl. ¶ 16; *see also Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.").

The proposed Notice itself is also appropriate, since it contains "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). The Notice sufficiently informs Class Members of (1) the nature of the litigation, the Settlement Class, and the identity of Class Counsel, (2) the essential terms of the Settlement,

21

including the gross settlement award and net settlement payments class members can expect to receive, (3) how notice and administration costs, court-approved attorneys' fees, costs, and service awards will be paid from the Settlement Fund, (4) how to make a claim, opt out, or object to the Settlement, (5) procedures and schedules relating to final approval, and (6) how to obtain further information. *See* SA Ex. 1, Long Form Notice. The Notice also satisfies the Settlement Guidelines' requirements to advise Class Members of the Settlement Website, and instructions on how to access the case docket. *See id*.

**VI.     CONCLUSION**

The Court should certify the Settlement Class, appoint Plaintiff Class Representative and his counsel Class Counsel, preliminarily approve the Settlement, and set a schedule and procedures through Final Approval

Date: October 4, 2021                    Respectfully submitted,

/s/ Jack Fitzgerald

**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
MELANIE PERSINGER
*melanie@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***