**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

*Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CURTIS HANSON, on behalf of himself, all others similarly situated, and the general public,<br><br>    Plaintiff,<br><br>v.<br><br>WELCH FOODS INC.,<br><br>    Defendant. | Case No. 3:20-cv-02011-JCS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date:     April 15, 2022, 9:30 a.m.<br>Judge:    Hon. Joseph C. Spero<br>Location: Courtroom F – 15th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ii

NOTICE OF MOTION ........................................................................................................................1

ISSUES TO BE DECIDED ..................................................................................................................1

MEMORANDUM OF POINTS & AUTHORITIES ............................................................................1

    I.     INTRODUCTION ...........................................................................................................1

    II.    LEGAL STANDARD......................................................................................................3

    III.   THE SETTLEMENT SHOULD BE FINALLY APPROVED AS FAIR,
           REASONABLE, AND ADEQUATE FOR THE CLASS.........................................................4

          A.    The Strength of the Case, and the Risk, Expense, Complexity, and Likely
                Duration of Further Litigation ............................................................................4

          B.    The Amount of Settlement..................................................................................6

          C.    Extent of Discovery Completed and Stage of Proceedings ................................7

          D.    The Experience and Views of Class Counsel.....................................................8

          E.    The Presence of a Governmental Participant.....................................................9

          F.    The Reactions of the Class Members..................................................................9

          G.    The Risk of Maintaining Class Action Status Through Trial ...........................11

    IV.   CONCLUSION..............................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ................................................................................................ 6

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ............................................................................................. 8

*Brazil v. Dole Packaged Foods, LLC*,
   660 Fed. App'x 531 (9th Cir. 2016) ........................................................................................... 6

*Broomfield v. Craft Brew Alliance, Inc.*,
   2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ......................................................................... 7, 11

*Chun–Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal.2010) ....................................................................................... 10

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ...................................................................................................... 6

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ....................................................................................................... 6

*Create-A-Card, Inc. v. Intuit, Inc.*,
   2009 WL 3073920 (N.D. Cal. Sept. 22, 2009) ......................................................................... 10

*Custom LED LLC v. eBay, Inc.*,
   2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) .......................................................................... 10

*De Leon v. Ricoh USA, Inc.*,
   2020 WL 1531331 (N.D. Cal. Mar. 31, 2020) ............................................................................ 7

*Donald v. Xanitos, Inc.*,
   2017 WL 1508675 (N.D. Cal. Apr. 27, 2017) ............................................................................ 5

*Edwards v. Andrews*,
   846 Fed. App'x 538 (9th Cir. 2021) ........................................................................................... 9

*Edwards v. Nat'l Milk Producers Fed'n*,
   2017 WL 3623734 (N.D. Cal. June 26, 2017) ................................................................ 9, 10, 12

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ................................................................................................... 8

*Espinosa v. Cal. Coll. of San Diego, Inc.*,
   2018 WL 1705955 (S.D. Cal. Apr. 9, 2018) ............................................................................... 3

*Fitzhenry-Russell v. Coca-Cola Co.*,
   2019 WL 11557486 (N.D. Cal. Oct. 3, 2019).................................................................................7

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
   2017 WL 4685536 (C.D. Cal. May 8, 2017) ............................................................................ 11, 12

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..................................................................................9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................................................10

*Hendricks v. Starkist Co.*,
   2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) .................................................................................7

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2020 WL 520616 (S.D. Cal. Jan. 31, 2020).....................................................................................7

*Holman v. Experian Info. Sols., Inc.*,
   2014 WL 7186207 (N.D. Cal. Dec. 12, 2014) ..................................................................................9

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018).....................................................................................................3

*In re Beef Indus. Antitrust Litig.*,
   607 F.2d 167 (5th Cir. 1979) ...........................................................................................................4

*In re Heritage Bond Litig.*,
   546 F.3d 667 (9th Cir. 2008) ...........................................................................................................3

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir.1995) ..............................................................................................................8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   720 F. Supp. 1379 (D. Ariz. 1989) ..................................................................................................3

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
   2016 WL 721680 (N.D. Cal. Jan. 28, 2016)....................................................................................3

*Jarrell v. Amerigas Propane, Inc.*,
   2018 WL 1640055 (N.D. Cal. Apr. 5, 2018) .................................................................................11

*Kim v. Allison*,
   8 F.4th 1170 (9th Cir. 2021) ............................................................................................................4

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) .............................................................................. 4, 6, 9, 10

*Krommenhock v. Post Foods, LLC*,
  2021 WL 750823 (N.D. Cal. Feb. 24, 2021) .................................................................................. 1

*LaGarde v. Support.com, Inc.*,
  2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) ............................................................................... 4

*Lane v. Brown*,
  166 F. Supp. 3d 1180 (D. Or. 2016) ........................................................................................ 7, 8

*Larsen v. Trader Joe's Co.*,
  2014 WL 3404531 (N.D. Cal. July 11, 2014) ........................................................................ passim

*Linney v. Cellular Alaska P'ship*,
  1997 WL 450064 (N.D. Cal. 1997) ............................................................................................ 8

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
  671 F. Supp. 819 (D. Mass 1987) .............................................................................................. 8

*Mandujano v. Basic Vegetable Prods. Inc.*,
  541 F.2d 832 (9th Cir. 1976) .................................................................................................... 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................................... passim

*Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................................................... 5

*Noll v. eBay, Inc.*,
  309 F.R.D. 593 (N.D. Cal. 2015) ............................................................................................. 10

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ..................................................................................................... 4

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007) ..................................................................................... 11

*Rael v. Children's Place, Inc.*,
  2020 WL 434482 (S.D. Cal. Jan. 28, 2020) .............................................................................. 11

*Rieckborn v. Velti PLC*,
  2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ............................................................................ 4, 5

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................................................. 6, 8

*Rojas v. Zaninovich*,
  2015 WL 3657172 (E.D. Cal. June 11, 2015) ........................................................................... 4

*Schneider v. Chipotle Mexican Grill, Inc.*,
    2020 WL 6484833 (N.D. Cal. Nov. 4, 2020) .................................................................. 11

*Schuchardt v. Law Office of Rory W. Clark*,
    314 F.R.D. 673 (N.D. Cal. 2016) ..................................................................................... 9

*Stonehocker v. Kindred Healthcare Operating LLC*,
    2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) ................................................................ 11

*Thomas v. MagnaChip Semiconductor Corp.*,
    2018 WL 2234598 (N.D. Cal. May 15, 2018) ................................................................ 11

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ......................................................................................... 3, 4

*Touhey v. United States*,
    2011 WL 3179036 (C.D. Cal. July 25, 2011) ................................................................ 11

*White v. Experian Info. Sols., Inc.*,
    2009 WL 10670553 (C.D. Cal. May 7, 2009) ................................................................. 8

*Zepeda v. PayPal, Inc.*,
    2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ............................................................... 10

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.632-35 ............................................................... 3

Northern District of California's Procedural Guidelines for Class Action Settlements ................. 1

**Rules**

Fed. R. Civ. P. 23(c)(1)(C) ........................................................................................................ 11

Fed. R. Civ. P. 23(e) ............................................................................................................. 1, 3

v

*Hanson v. Welch Foods, Inc.*, No. 3:20-cv-02011-JCS
MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

**NOTICE OF MOTION**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 23(e) and the Northern District of California's Procedural Guidelines for Class Action Settlements ("Settlement Guidelines"), and the Court's December 13, 2021 Order Granting Preliminary Approval (Dkt. No. 60, the "PA Order"), on April 15, 2021, at 9:30 a.m., or as soon thereafter as may be heard, Plaintiff will move the Court, the Honorable Joseph C. Spero presiding, for an Order: (1) finally certifying the Settlement Class; (2) finally approving the Settlement as fair, reasonable, and adequate to the Class; (3) directing the parties to undertake the obligations set forth in the Settlement Agreement that arise out of the Court's final approval; (4) entering Judgment; and (5) maintaining jurisdiction over this matter for purpose of enforcing the Judgment. This Motion is based on this Notice of Motion; the below Memorandum; the concurrently-filed declarations of Jack Fitzgerald ("Fitzgerald Decl.") and Brandon Schwartz ("Schwartz Decl."), and all exhibits thereto; the parties' December 3, 2021 Settlement Agreement ("SA")[1]; all prior pleadings and proceedings; and any additional evidence and argument submitted in support of the Motion.

**ISSUES TO BE DECIDED**

Whether the Court should finally certify the Settlement Class, grant the proposed Settlement final approval, direct the parties to undertake the obligations set forth in the Settlement Agreement, enter Judgment, and maintain jurisdiction over the matter for purpose of enforcing the Judgment.

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.    INTRODUCTION**

On December 13, 2021, the Court preliminarily approved a nationwide class action settlement between Plaintiff Curtis Hanson, on the one hand, and Defendant Welch Foods, Inc., on the other. *See* PA Order ¶ 3 (Finding that "the proposed Settlement Agreement is fair, reasonable, adequate," "is the result of serious, informed, non-collusive, arms-length negotiations, involving experienced counsel familiar with the legal and factual issues of this case," and "meets all applicable requirements of law"). The Settlement resolves allegations that Welch violated California consumer protection laws and breached warranties by

---

[1] Attached as Exhibit A (Dkt. No. 59-1) to the Supplemental Declaration of Jack Fitzgerald in Support of Plaintiff's Motion for Preliminary Approval (Dkt. No. 59).

misleadingly and unlawfully marketing three 100% Grape Juices as helping to support heart health. *See generally* Dkt. No. 23, First Am. Compl. ("FAC").

Notice has now been provided to the Class in accordance with the approved Notice Plan. *See* Schwartz Decl. ¶¶ 2-18. This included (1) a media notice plan resulting in 319,527,968 digital impressions; (2) publication notice in *US Weekly*; (3) a press release through PR Newswire's US1 and National Hispanic Newsline, picked up by 421 media outlets, reaching a total potential audience of 142,000,000; and (4) notices with third-party websites TopClassActions.com, which drove more than 60,000 class members to the Settlement Website. *Id.* ¶¶ 7-10 & Exs. B-E. As a result, the Notice Plan "delivered a 72.59% reach with an average frequency of 2.02," for "a total reach exceeding the originally estimated 70% reach." *Id.* ¶ 17. The Settlement Website, informational email address, and toll-free hotline (IVR) that P&N set up also received significant use. *See id.* ¶¶ 12-13, 16 (As of March 18, 2022, more than 303,000 unique users have made more than 1.3 million views of the Settlement Website, and the IVR has received 165 calls or voicemails).

The Class's response to the Settlement has been overwhelmingly positive. While 155,833 Class Members made valid claims—representing a robust 4.87% claims rate[2]—only 7 have opted out, and none have objected. *Id.* ¶¶ 20, 25-27 & Ex G. If the Court awards the attorneys' fees, costs, service awards, and Class Administrator fees requested (which were significantly below its estimate), claimants will receive an average refund of $4.94. *See* Fitzgerald Decl. ¶ 3. Given estimated damages of 14.5¢ per unit, *see id.* ¶ 2, this represents a recovery of the full damages amount for more than 34 bottles of the Welch 100% Grape Juices at issue.

As reflected by the high number of claims, few exclusions, and lack of objections, this is a fair, reasonable, and adequate Settlement for the Class, while eliminating inherent risk.[3] Because the Settlement

---

[2] The estimated class size is 3.2 million. *See* Dkt. No. 51, Declaration of Brandon Schwartz in Support of Motion for Preliminary Approval ¶ 13. The claims rate is thus more than the 2.41% predicted, *see* Dkt. No. 50, Declaration of Jack Fitzgerald in Support of Motion for Preliminary Approval ("PA Fitzgerald Decl.") ¶ 21, and higher than the rates in *Krommenhock*, *Hadley*, and *McMorrow*, *see* Fitzgerald Decl. ¶ 5.

[3] The procedural, litigation, and settlement history was detailed in Plaintiff's Motion for Preliminary Approval, *see* Dkt. No. 49 at 2-3, which the Court granted, Dkt. No. 60. The Court should finally certify the Settlement Class for the same reasons set forth therein. *See Raquedan v. Volume Servs., Inc.*, 2020 WL 10574547, at *2 (N.D. Cal. Oct. 28, 2020) ("For the reasons stated in the Preliminary Approval Order, the Court finds and determines that the proposed Class, as defined in the definitions section of the Settlement

provides an excellent result for the Class and eliminates the risk and expense of continued litigation and lengthy appeals, Plaintiff respectfully requests the Court grant the Settlement final approval and enter Judgment.

## II. LEGAL STANDARD

"Judicial policy favors settlement in class actions and other forms of complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation." *Espinosa v. Cal. Coll. of San Diego, Inc.*, 2018 WL 1705955, at *5 (S.D. Cal. Apr. 9, 2018) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989)). A class action settlement must be approved by the Court before it can become effective. *See* Fed. R. Civ. P. 23(e). The process is comprised of three steps: (1) preliminary approval; (2) dissemination of notice to the class which provides class members the opportunity to object or opt out and; (3) a final approval hearing, at which the court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class and whether plaintiff's request for attorneys' fees, expense reimbursement and service awards should be approved. *See* Manual for Complex Litigation (Fourth) § 21.632-35; *see also In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 721680, at *16 (N.D. Cal. Jan. 28, 2016). The first two steps are complete; Plaintiff now seeks an Order finally approving the Settlement.

"In evaluating a proposed class action settlement under Federal Rule of Civil Procedure 23(e), the standard is whether the settlement 'is fundamentally fair, adequate and reasonable.'" *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018) ["*Anthem*"] (citing *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). "In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight '*Churchill* factors,'" namely:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

---

Agreement and conditionally certified by the Preliminary Approval Order, meets all of the legal requirements for class certification").

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Anthem*, 327 F.R.D. at 317 (same).

Courts need not weigh all factors, "and different factors may predominate in different factual contexts." *Rieckborn v. Velti PLC*, 2015 WL 468329, at *3 (N.D. Cal. Feb. 3, 2015) (quoting *Torrisi*, 8 F.3d at 1376). Further:

> While considering all these interests, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

*Id.*, at *4 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

### III. THE SETTLEMENT SHOULD BE FINALLY APPROVED AS FAIR, REASONABLE, AND ADEQUATE FOR THE CLASS

A consideration of the *Churchill* factors demonstrates the Settlement is fair, reasonable, and adequate, warranting final approval.

#### A. The Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

"In determining whether the settlement is fair, reasonable, and adequate" the Court first "balance[s] the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831-32 (N.D. Cal. 2017) (citing *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014); *LaGarde v. Support.com, Inc.*, 2013 WL 1283325, at *4 (N.D. Cal. Mar. 26, 2013)). Given "all the normal perils of litigation as well as the additional uncertainties inherent in complex class action." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th Cir. 1979), "unless [a proposed] settlement is clearly inadequate," a court should normally find "its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Knapp*, 283 F. Supp. 3d at 832 (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted)); *see also Rojas v. Zaninovich*, 2015 WL 3657172, at *12 (E.D. Cal. June 11, 2015) (Courts

4

consider, among other things, the "normal perils of litigation, including the merits of the affirmative defenses asserted by Defendant, the difficulties of complex litigation, [and] the lengthy process of establishing specific damages,").

Here, "[w]hile [ ] [P]laintiffs . . . believe their claims are strong, they acknowledge," as detailed in their Motion for Preliminary Approval (Dkt. No. 49, the "PA Mot."), "that they would face significant risks should the case proceed through litigation." *See Larsen*, 2014 WL 3404531, at *4 (record citation omitted); *compare* PA Mot. at 15-17. Of course, Welch "vigorously denied liability and challenged all of [ ] [P]laintiff['s] claims." *See Larsen*, 2014 WL 3404531, at *4 (record citation omitted); *compare*, *e.g.*, Dkt. No. 19 at 2-4, 7 (Welch's statements in parties' Joint Rule 26(f) Report). For example, Welch asserted that more than 30 studies showed the polyphenols in its grape juice have heart-protective effects, supporting its "healthy heart" claims. PA Fitzgerald Decl. ¶ 14. And even if Plaintiff obtained and maintained class certification then prevailed at trial, Welch would likely press numerous issues on appeal.

The Settlement, by contrast, "achieves a definite and certain result for the benefit of the Settlement Class[]," making it "preferable to continuing litigation in which the Settlement Class would necessarily confront substantial risk, uncertainty, delay, and cost." *See Donald v. Xanitos, Inc.*, 2017 WL 1508675, at *2 (N.D. Cal. Apr. 27, 2017). Thus, in light of "the significant risks that lie ahead . . . [at] trial, it is reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results." *See Larsen*, 2014 WL 3404531, at *4. Because "[t]he settlement avoids the risks that the [P]laintiffs would not succeed in demonstrating that [Welch] failed to comply with state consumer protection laws," "this factor weighs in favor of final approval of the settlement." *See id.*; *see also Rieckborn*, 2015 WL 468329, at *4-5 (the "first two [*Churchill*] factors weigh in favor of approval" where "Plaintiffs contend that their claims have significant merit but acknowledge a number of risks and uncertainties should they proceed," including that "Defendants have adamantly denied liability and have asserted from the outset that they possess absolute defenses to all of plaintiffs' claims," and that "[p]roving damages would also entail substantial uncertainty . . . depend[ing] . . . on which, if any, of the four alleged partial corrective disclosures plaintiffs are ultimately able to rely," making "further litigation . . . likely to be costly and time-intensive, with no guarantee of a more beneficial outcome for class members as a result"); *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014)

5

(finding first two *Churchill* factors met where, "although [the plaintiffs'] claims were quite strong," there were factual challenges facing them at trial, including "challenges [with] [ ] damages").

### B.     The Amount of Settlement

"This factor examines the benefits to class members." *Larsen*, 2014 WL 3404531, at *4 (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 574 (9th Cir. 2004)). "Assessing the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'" *Knapp*, 283 F. Supp. 3d at 832 (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Instead, "[w]hen considering the fairness and adequacy of the amount offered in settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527). Further, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527; *cf. City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). Finally, that a "Settlement Agreement also provides for injunctive relief" is an important consideration in evaluating its benefit, since "class members that choose to continue doing business with [the defendant] will benefit from this aspect as well." *See Knapp*, 283 F. Supp. 3d at 833.

Here, the Settlement's $1,500,000 common fund for a nationwide Class of approximately 3.2 million Members, is fair, reasonable, and adequate, especially in light of the injunctive relief obtained for the public and Class's benefit, *see* PA Mot. at 5, 20. Assuming the Court approves or awards the full amount of notice and administration costs, attorneys' fees and costs, and service awards requested, Class Member claimants will divide the remaining approximately $771,041.18 for cash refunds of between $0.55 and $54.47 per claimant (with an average refund of $4.94 per claimant). *See* Schwartz Decl. ¶¶ 28-29; Fitzgerald Decl. ¶ 3. These amounts represent significant recoveries in relation to potential trial damages, where Plaintiff would have to show "the difference between the prices customers paid and the value of the [products] they bought— in other words, the 'price premium' attributable to [Defendant's advertising claims]." *See Brazil v. Dole Packaged Foods, LLC*, 660 Fed. App'x 531, 534 (9th Cir. 2016).

Plaintiff's expert, Colin B. Weir, estimated maximum trial damages of $629,927 to $872,206 (with maximum trial damages for a hypothetical nationwide class of $5.25 million to $9.27 million). *See* PA Fitzgerald Decl. ¶¶ 8, 12. Using the largest number, $9.27 million divided among 3.2 million Class Members is $2.90 each. Claimants' average recovery under the Settlement, which is 170% higher, is therefore excellent, particularly given the risks and expenses associated with trial and appeals and robust claims rate.

Because the Settlement amount is a fair, reasonable, and adequate result for the Class, this factor weighs in favor of approval. *See Broomfield v. Craft Brew Alliance, Inc.*, 2020 WL 1972505, at *9 (N.D. Cal. Feb. 5, 2020) (approving settlement where Class Members would receive between $1.25 to $2.75 per unit purchased, for a maximum of $10 without proof of purchase); *Fitzhenry-Russell v. Coca-Cola Co.*, 2019 WL 11557486, at *6 (N.D. Cal. Oct. 3, 2019) (approving settlement fund of $2,450,000 that would pay restitution of $0.80 per unit, up to $10.40 (thirteen units) without proof of purchase); *Hendricks v. Starkist Co.*, 2016 WL 5462423, at *5 (N.D. Cal. Sept. 29, 2016) (approving settlement in which class members would receive $1.97 cash or $4.43 voucher per claim, and noting that the "settlement amount, while constituting only a single-digit percentage of the maximum potential exposure, is reasonable given the stage of the proceedings and the defenses asserted"); *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020) (finding $1.00 recovery per bottled purchased to be "an excellent result" considering the fraction of purchase price recoverable at trial); *cf. De Leon v. Ricoh USA, Inc.*, 2020 WL 1531331, at *9 (N.D. Cal. Mar. 31, 2020) (granting final approval where "[i]n granting preliminary approval the Court concluded that the estimated payout to class members was fair in relation to the risks of continued litigation . . . and there [wa]s nothing in the final approval materials that change[d] the Court's analysis on that score").

C.    **Extent of Discovery Completed and Stage of Proceedings**

"The extent of discovery completed and the state of the proceedings at the time of settlement is a strong indicator of whether the parties have sufficient understanding of each other's cases to make an informed judgment about their likelihood of prevailing." *Lane v. Brown*, 166 F. Supp. 3d 1180, 1190 (D. Or. 2016). Thus, "[a] court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (internal quotation marks

and citation omitted). "For that reason, '[a] settlement following sufficient discovery and genuine arms-length negotiation is *presumed fair*.'" *Lane*, 166 F. Supp. 3d at 1190 (emphasis added) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528).

Although "[d]iscovery in this case was not extensive," it was "sufficient for the parties to understand the case and fairly evaluate its value and risks," particularly since "for the last five years, [Class Counsel] has been involved in prosecuting four other class actions based on similar liability theories," PA Fitzgerald Decl. ¶ 4. Here:

> Plaintiff obtained from Welch: (i) product labels and spreadsheets identifying each label's approximate start and end dates, the claims on each label, and any changes thereto; (ii) a spreadsheet identifying all scientific studies Welch claimed substantiates its "healthy heart" claims, including Welch's involvement in each study, if any; (iii) communications from consumers and other attorneys concerning the labeling of the Class Products; (iv) price lists; and (v) information about potential insurance coverage.

*Id.* ¶ 6. Combined with sales data, *see id.* ¶ 7, and information about the value of "heart health" claims in a similar suit, *see id.* ¶¶ 8, 12, the information enabled Class Counsel to reasonably assess the merits and value of the case and, thus, the fairness of the Settlement amount.

### D.     The Experience and Views of Class Counsel

The Ninth Circuit "ha[s] held that '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation,'" *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). In determining whether a settlement is fair and reasonable, "[t]he judgment of experienced counsel regarding the settlement is [therefore] entitled to great weight." *White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, at *12 (C.D. Cal. May 7, 2009) (citing *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass 1987); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. 1997); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980)). As a result, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Id.* (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)).

Here, Class Counsel has considerable experience in consumer class actions, and particularly those involving the false advertising of foods, especially as healthy. Moreover, during the pendency of this action, Class Counsel has been litigating several similar cases concerning the advertising of *sugary foods* as healthy,

in particular, and has therefore been exposed to a wide variety of information about the claims and defenses, and ultimately the potential upside and risks attendant to this case. PA Fitzgerald Decl. ¶ 4. Because Class Counsel has substantial experience with complex class actions generally, and an intimate understanding of the relevant facts and issues here, and strongly endorses the Settlement, *id.* ¶ 16, this factor favors final approval. *See Larsen*, 2014 WL 3404531, at *5 (factor favored final approval where "Plaintiffs' counsel ha[d] successfully represented consumers both as litigation class and settlement class counsel numerous times, including cases involving food mislabeling," and "believe[d] approval [wa]s in the best interests of the putative settlement class.").

### E. The Presence of a Governmental Participant

"There is no governmental participant here." *See Knapp*, 283 F. Supp. 3d at 833. Because, however, P&N "notified officials of the proposed settlement pursuant to CAFA . . . and no government entity has raised an objection," this factor "favors settlement." *See id.* (citing *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016); *Holman v. Experian Info. Sols., Inc.*, 2014 WL 7186207, at *3 (N.D. Cal. Dec. 12, 2014); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010)); *compare* Schwartz Decl. ¶ 6 (No state Attorney Generals have objected after receiving CAFA notice of the Settlement).

### F. The Reactions of the Class Members

"The reaction of the class to the settlement is overwhelmingly positive," with a robust 155,833 valid claims filed (representing a 4.87% rate compared to the 2.41% rate predicted, *see* PA Fitzgerald Decl. ¶ 21), only 7 opt-outs, and no objections;[4] this factor thus "strongly favors final approval." *See Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *2, *8 (N.D. Cal. June 26, 2017) (Factor favored approval where "307,396 class members had submitted claims online, and an additional 125 class members had submitted paper claim forms," yet "only eight objections and one request for exclusion were received out of the millions of class members receiving notice."), *aff'd sub nom.*, *Edwards v. Andrews*, 846 Fed. App'x 538 (9th Cir. 2021). That is because "[a] low number of opt-outs and objections in comparison to class size is

---

[4] Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards and supporting Declaration (Dkt. Nos. 64-65) were publicly filed on January 31, 2022 and posted to the Settlement Website the same day. Class Members thus had full access to the motion for five weeks before the objection deadline, but no Class Member has objected to any aspect of the motion. Fitzgerald Decl. ¶ 4.

1  typically a factor that supports settlement approval." *Noll v. eBay, Inc.*, 309 F.R.D. 593, 608 (N.D. Cal. 2015)
2  (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming
3  majority of the class willingly approved the offer and stayed in the class presents at least some objective
4  positive commentary as to its fairness")); *see also Larsen*, 2014 WL 3404531, at *5 ("The participation rate
5  and positive response of the class weigh[ed] in favor of finding that the settlement is favorable to the class
6  members" where "a total of 59,830 class members [ ] submitted claim forms, twenty-three [ ] opted out, and
7  sixteen [ ] objected"); *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *15 (N.D. Cal. Mar. 24, 2017) ("The
8  Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to
9  be considered." (citing *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976))).

10  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong
11 presumption that the terms of a proposed class settlement action are favorable to the class members," *Larsen*,
12  2014 WL 3404531, at *5 (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529), and courts
13  "appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members
14  object to it," *id.* (quoting *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920, at *15 (N.D. Cal. Sept. 22,
15  2009)). "This 'strong presumption' of fairness arises here, because . . . [no] objections and [only seven]
16  request[s] for exclusion were received out of the millions of class members receiving notice." *See Edwards*,
17  2017 WL 3623734, at *8; *see also* Schwartz Decl. ¶¶ 7-11, 25-26.

18  The absence of any objections and exceedingly low opt-out rate (0.00022%) strongly favors final
19  approval here, since "[t]hese statistics indicate a favorable reaction by class members and their overall
20  satisfaction with the Settlement." *See Noll*, 309 F.R.D. at 608 (factor favored approval where "of over
21  1,188,000 potential Class Members, only 97 [ ] opted out" and "only three objections were filed (including
22  one that was not timely), translating into an objection rate of 0.00025%" (citing *Custom LED LLC v. eBay,
23  Inc.*, 2013 WL 6114379, at *9 (N.D. Cal. Nov. 20, 2013) (granting final approval and characterizing 0.04%
24  exclusion rate, with one objection, as "overwhelmingly positive" reaction); *Chun–Hoon v. McKee Foods
25  Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal.2010) (4.86% opt-out rate strongly supported approval))); *see
26  also Knapp*, 283 F. Supp. 3d at 834 (factor favored final approval where "[t]he settlement administrator
27  received valid opt-outs from 452 class members, which amount[ed] to less than .03 percent of the class
28  members who received notice," making "[i]t [ ] apparent that the 'overwhelming majority of the class' had

nothing to say about the fairness of the settlement." (quotation omitted)).[5]

While the low opt-out and nonexistent objection rates indicate the majority of the Class approved of the Settlement and chose to remain in the Settlement Class, the 4.87% claims rate is fairly strong, and at least "on par with other consumer cases, and does not otherwise weigh against approval." *See Schneider v. Chipotle Mexican Grill, Inc.*, 2020 WL 6484833, at *9 (N.D. Cal. Nov. 4, 2020) (approving settlement with 0.83% claims rate) (citing *Broomfield*, 2020 WL 1972505, at *7 (approving settlement with response rate of "about two percent")). Notably, the claims rate here was higher than *Krommenhock* (1.78%), *Hadley* (3.17%), and *McMorrow v. Mondelez* (4.4%). *See* Fitzgerald Decl. ¶ 5. Because "consumer class actions tend to result in claims rates in the low single digits," *Rael v. Children's Place, Inc.*, 2020 WL 434482, at *9 (S.D. Cal. Jan. 28, 2020), the Court should find that the 4.87% claims rate supports final approval here, particularly in light of the low opt-out rate and lack of objections. *See Touhey v. United States*, 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (approving settlement where only 38 claims were filed, which was "approximately 2%" claims rate, based in part on "the lack of objections"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377-78 (S.D. Fla. 2007) (approving settlement with claims rate of about 1.2%).

### G.   The Risk of Maintaining Class Action Status Through Trial

"This factor, which concerns the risk of maintaining class certification, also favors settlement." *Larsen*, 2014 WL 3404531, at *4. While the Court "conditionally certified a class for settlement purposes only in granting preliminary approval," "[u]nder Federal Rule of Civil Procedure 23(c)(1)(C), an 'order that grants . . . class certification may be altered or amended before the final judgment.'" *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2017 WL 4685536, at *4 (C.D. Cal. May 8, 2017) (quoting Fed. R. Civ. P. 23(c)(1)(C)). Thus, "[a]lthough Plaintiffs believe they would be successful in maintaining class action status through trial and appeal," Welch would have vigorously contested certification, and "the risk that Defendant may prove successful in attacking class certification . . . favors

---

[5] *See also Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226, at *5 (N.D. Cal. Apr. 27, 2021) (finding "[t]he reaction of the class was overwhelmingly positive" where "the Court received only three opt-outs and no objections"); *Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *2-3 (N.D. Cal. May 15, 2018) (finding "[t]he reaction of the class was overwhelmingly positive" where "[n]o class members objected, and only one class member submitted a request for exclusion"); *Jarrell v. Amerigas Propane, Inc.*, 2018 WL 1640055, at *2 (N.D. Cal. Apr. 5, 2018) (finding "[t]he reaction of the class was overwhelmingly positive" where "[n]o objections were received, and only three class members, or approximately 1% of the class, opted out." (record citation omitted)).

final approval of the Settlement Agreement." *See id.*; *cf. Edwards*, 2017 WL 3623734, at *7 ("Although plaintiffs are confident the class would remain certified through trial, the risk 'was not so minimal that this factor could not weigh in favor of the settlement.'" (quotation and citation omitted)).

## IV. CONCLUSION

Each of the *Churchill* factors favors granting the Settlement final approval. Plaintiff respectfully requests the Court do so and enter Judgment.

Date: March 21, 2022                    Respectfully submitted,

/s/ Jack Fitzgerald

**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
MELANIE PERSINGER
*melanie@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Class Counsel***